UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CLEAR SKIES NEVADA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.  15 CV 6708 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| WILLIAM ANDERSON, JASON RICHARDS | ) | |
| And RENEE HANCOCK, | ) | Magistrate Susan E. Cox |
| | ) | |
| Defendants. | ) | |
| _____ | | |
| | | |
| RENEE HANDCOCK, on behalf of herself | ) | |
| and others similarly situated, | ) | |
| | ) | |
| Counter-Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CLEAR SKIES NEVADA, LLC, | ) | |
| | ) | |
| Counter-Defendant. | ) | |

**DEFENDANT RENEE HANCOCK'S ANSWER, AFFIRMATIVE DEFENSES AND CLASS ACTION COUNTERCLAIM IN RESPONSE TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

**NOW COMES** Defendant Renee Hancock and answers the Amended Complaint as follows:

1.    This is a civil action seeking damages and injunctive relief for copyright infringement under the copyright laws of the United States (17 U.S.C. § 101 et seq.). As set forth in greater detail below, this action involves the unauthorized acquisition and transfer by

1

Defendants of Plaintiff's mainstream copyrighted motion picture *Good Kill* (hereinafter the "Motion Picture" or "*Good Kill*").

**ANSWER**: Defendant Hancock admits only that this is an action seeking damages and injunctive relief, and denies the remaining allegations of paragraph 1.

2. Good Kill is a drama-thriller film directed by Andrew Niccol, and stars Ethan Hawke, Bruce Greenwood and January Jones ,among others. The Motion Picture has significant value and has been created and produced at considerable expense. Good Kill has played in theaters and is available for rental and/or purchase from at least Amazon, Google Play and Blockbuster On Demand.

**ANSWER**: Defendant Hancock lacks personal knowledge of the accolades described in paragraph 2 and therefore denies same.

3. This Court has jurisdiction under 17 U.S.C. § 101 et seq.; 28 U.S.C. § 1331 (federal question); and 28 U.S.C. § 1338 (a) (copyright).

**ANSWER**: Defendant Hancock admits that the court has jurisdiction.

4. The transfer and copying of the Motion Picture is accomplished using a network called a "BitTorrent protocol" or "torrent," which is different than the standard Peer-to-Peer ("P2P") protocol. The BitTorrent protocol makes even small computers with low bandwidth capable of participating in large data transfers across a P2P network. The initial file-provider intentionally elects to share a file with a torrent network. This initial file is called a seed. Other users ("peers") and the network, through a series of steps, connect to the seed file to download a movie. As additional peers request the same file, each additional user becomes a part of the network fro which the file can be downloaded. Each new file downloader receives a different

piece of the data from each user who has already downloaded the file that together comprises the whole. This piecemeal system with multiple pieces of data coming from peer members is usually referred to as a "swarm." The effect of this technology makes every downloader also an uploader of the illegally transferred file(s). This means that every "node" or peer user who has a copy of the infringing copyrighted material on a torrent network intentionally also becomes a source of download for that infringing file.

**ANSWER**:    Defendant Hancock lacks personal knowledge to admit or deny of the allegations contained in paragraph 4, and therefore denies same. Further answering Defendant Hancock objects to paragraph 4 insofar as it makes no allegations specific to her and contains multiple legal conclusions, and therefore denies the allegations contained therein. Specifically Hancock denies the conclusions that (a) every downloader is also an uploaded; that "every 'node or peer user who has a copy is also a source of download; and especially that BitTorrent = infringement, which is Plaintiff's intended conclusion.

5.    This distributed nature of BitTorrent leads to a rapid viral spreading of a file throughout peer users. As more peers join the swarm, the likelihood of a successful download increases. Because of the nature of a BitTorrent protocol, any seed peer who has downloaded a file prior to the time a subsequent peer downloads the same file is automatically a source for the subsequent peer so long as that first seed peer is online at the time the subsequent peer downloads a file. Essentially, because of the nature of the swam downloads as described above, every infringer is stealing copyrighted material from many Internet Service Providers (ISPs") in numerous jurisdictions.

3

**ANSWER:** Defendant Hancock lacks personal knowledge to admit or deny the allegations contained in paragraph 5, and therefore denies same. Further answering Defendant Hancock objects to paragraph 5 insofar as it makes no allegations specific to her and contains multiple legal conclusions, and therefore denies the allegations contained therein.

6. On information and belief, personal jurisdiction in this District is proper because Defendant, without consent or permission of Plaintiff as exclusive rights owner, within Illinois and within this District, reproduced, distributed and offered to distribute among other Defendants over the Internet the copyrighted motion Picture for which Plaintiff has exclusive rights. Plaintiff has used geolocation technology to trace the Internet Protocol ("IP") address of each Defendant to a point of origin within this District. On information and belief, Defendant has an IP address based in this District and resides in or committed copyright infringement in this District.

**ANSWER**: Defendant Hancock lacks personal knowledge to admit or deny the allegations contained in paragraph 5, and therefore denies same. Further answering Defendant Hancock objects to paragraph 5 insofar as it does not make any allegations specific to her, and contains multiple legal conclusions, and therefore denies the allegations contained therein.

7. In the alternative, this Court has personal jurisdiction over non-resident Defendants, if any, under the Illinois long-arm statute, 735 ILCS 5/2-209(a)(2) because they downloaded copyrighted content from or uploaded it to Illinois residents located in this District, thus committing a tortious act within the meaning of the Statue.

**ANSWER:** Defendant Hancock denies the allegations contained in paragraph 7.

4

8.      Venue in this District is proper under 28 U.S.C. §1391(b) and/or 28 U.S.C. § 1400(a). On information and belief, Defendants reside in this District, may be found in this District and/or a substantial part of the acts of infringement complained of herein occurred in this District.

**ANSWER**:      Defendant Hancock admits only that she resides in this District, and lacks personal knowledge sufficient to admit or deny the remaining allegations contained in paragraph 8, and therefore denies same.

9.      Plaintiff is a motion picture developer and producer. Plaintiff brings this action to stop Defendant from copying and distributing to others over the Internet unauthorized copies of Plaintiff's copyrighted Motion Picture. Defendant's infringements allows him and others unlawfully to obtain and distribute for free unauthorized copyrighted works that Plaintiff spends considerable sums to create, acquire and/or distribute. Each time Defendant unlawfully distributes a free copy of Plaintiff's copyrighted Motion Picture to others over the Internet, each person who copies the Motion Picture then distributes the unlawful copy to others without any significant degradation in sound and picture quality. Thus, Defendant's distribution of even one unlawful copy of a motion picture can result in the nearly instantaneous worldwide distribution of that single copy to a limitless number of people. Plaintiff now seeks redress for this rampant infringement of its exclusive rights.

**ANSWER**:      Defendant Hancock lacks personal knowledge to admit or deny the allegations contained in paragraph 9, and therefore denies same. Further answering Defendant Hancock objects to paragraph 9 insofar as it references "him," makes no allegations to her specifically, and contains multiple legal conclusions, and therefore denies the allegations contained therein.

10. Plaintiff is the owner of the copyright and/or the pertinent exclusive rights under copyright in the United States in the Motion Picture that has been unlawfully distributed over the Internet by Defendant.

**ANSWER**: Defendant Hancock lacks personal knowledge to admit or deny the allegations contained in paragraph 10, and therefore denies same. Defendant Hancock further denies the allegations contained in paragraph 10 on the merits.

11. Plaintiff believes that additional information obtained in discovery will lead to the identification of additional infringing parties, as monitoring of online infringement of Plaintiff's motion picture is ongoing.

**ANSWER**: Defendant Hancock lacks personal knowledge to admit or deny the allegations contained in paragraph 11, and therefore denies same. Further answering, Defendant Hancock states that bringing suit against a defendant for the purpose of locating other potential defendants is bringing suit for an improper purpose.

12. On information and belief, Defendant William Anderson is a resident of the Northern District of Illinois and Crystal Lake. On information and belief, Defendant Anderson was observed infringing Plaintiff's motion picture using Internet Protocol Address 67.175.185.137 (formerly Doe No. 7) See Exhibit C (providing details regarding the exact time of infringement).

**ANSWER**: Defendant Hancock lacks personal knowledge to admit or deny the allegations contained in paragraph 11, and therefore denies same.

13. On information and belief, Defendant Jason Richards is a resident of the Northern District of Illinois and Richton Park. On information and belief, Defendant Richards

was observed infringing Plaintiff's motion picture using Internet Protocol Address 67.175.33.37

(formerly Doe No. 18). See Exhibit C (providing details regarding the exact time of infringement).

**ANSWER**:    Defendant Hancock lacks personal knowledge to admit or deny the allegations

contained in paragraph 11, and therefore denies same.

14.    On information and belief, Defendant Renee Hancock is a resident of the Northern

District of Illinois and Palatine. On information and belief, Defendant Hancock was observed

infringing Plaintiff's motion picture using Internet Protocol Address 98.213.32.27 (formerly Doe

No. 29). See Exhibit C providing details regarding the exact time of infringement.

**ANSWER**:    Defendant Hancock admits that she is a resident of the Northern District of

Ilinois and Palatine, and denies the remaining allegations of paragraph 14.

**COUNT I**
**COPYRIGHT INFRINGEMENT**

15.    At all relevant times, Plaintiff has been the holder of the pertinent exclusive

rights infringed by Defendants, as alleged hereunder, for the copyrighted Motion Picture,

including derivative works. The copyright Motion Picture is the subject of a valid Certificate of

copyright Registration (Registration No. PAu 1-762-377) issued by the Register of Copyrights on

April 6, 2015. (Exhibit A.)

**ANSWER**:    Defendant Hancock lacks personal knowledge to admit or deny the allegations

contained in paragraph 15, and therefore denies same.

16.    The copyrighted Motion Picture includes a copyright notice advising the viewed

that the Motion Picture is protected by the Copyright Laws.

**ANSWER**:    Defendant Hancock lacks personal knowledge to admit or deny the allegations

contained in paragraph 16, and therefore denies same.

17. Plaintiff is informed and believes that Defendant, without the permission or consent of Plaintiff, has used, and continues to use, an online media distribution system to reproduce and distribute to the public, including by making available for distribution to others, the copyrighted Motion Picture. Plaintiff has identified Defendant by the IP address assigned to Defendant by her ISP and the date and the time at which the infringing activity of each Defendant was observed (Exhibit B). Defendant has violated Plaintiff's exclusive rights of reproduction and distribution. Each Defendant's actions constitute infringement of Plaintiff's exclusive rights protected under the Copyright Act (17 U.S.D. § 101, et seq.)

**ANSWER**: Defendant Hancock denies the allegations contained in paragraph 17.

18. On information and belief, Defendant deliberately participated in a swarm and/or reproduced and/or distributed the same seed file of Plaintiff's copyrighted motion Picture in digital form with others. In particular, on information and belief, Defendant participated in a collective and interdependent manner with others via the Internet for the unlawful purpose of reproducing, exchanging and distributing copyrighted material unique to the swarm.

**ANSWER**: Defendant Hancock denies the allegations contained in paragraph 19.

19. By participating in the same swarm, each Defendant participated in the same transaction, occurrence or series of transactions or occurrences as the other Defendants in the swarm. The foregoing acts of infringement constitute a collective enterprise of shared, overlapping facts and have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiff.

**ANSWER**:    Defendant Hancock objects to paragraph 19 insofar as it makes no allegations specific to her. Further answering, Defendant Hancock denies the allegations contained in paragraph 19.

20.    As a result of Defendant's infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to relief pursuant to 17 U.S.C. § 504 and to its attorneys' fees and costs pursuant to 17 U.S.C. § 505.

**ANSWER**:    Defendant Hancock objects to paragraph 20 insofar as it makes no allegations specific to her. Further answering, Defendant Hancock denies the allegations contained in paragraph 20.

21.    The conduct of Defendant is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendant from further infringing Plaintiff's copyright and ordering that Defendant destroy all copies of the copyrighted Motion Picture made in violation of Plaintiff's copyrights.

**ANSWER**:    Defendant Hancock objects to paragraph 21 insofar as it makes no allegations specific to her. Further answering, Defendant Hancock denies the allegations contained in paragraph 21.

### PRAYER FOR RELIEF

1.    For entry of permanent injunctions providing that Defendant shall be enjoined from directly or indirectly infringing Plaintiff's rights in the copyrighted Motion Picture, including without limitation by using the Internet to reproduce or copy Plaintiff's Motion

Picture, to distribute Plaintiff's Motion Picture, or to make Plaintiff's Motion Picture available for distribution to the public, except pursuant to a lawful license or with the express authority of Plaintiff. Defendant also shall destroy all copies of Plaintiff's Motion Picture that Defendant has downloaded onto any computer hard drive or server without Plaintiff's authorization and (subject to the Order of Impoundment prayer for below) shall serve up all copies of the downloaded Motion Picture transferred onto any physical medium or device in each Defendant's possession, custody or control.

2.      For judgment in favor of Plaintiff against Defendant that Defendant has: a) willfully infringed Plaintiff's rights in its federally registered copyright pursuant to 17 U.S.C. § 501; and b) otherwise injured the business reputation and business of Plaintiff by Defendant's acts and conduct set forth in this Complaint.

3.      For Judgment in favor of Plaintiff against Defendant for actual damages or statutory damages pursuant to 17 U.S.C. § 504, at the election of Plaintiff, in an amount to be determined at trial.

4.      For an Order of Impoundment under 17 U.S.C. §§ 503 and 509(a) impounding all infringing copies of Plaintiff's Motion Picture which are in Defendant's possession or under their control.

5.      For Judgment in favor of Plaintiff and against Defendant awarding Plaintiff attorneys' fees, litigation expenses (including fees and costs of expert witnesses) and other costs of this action.

6.      For Judgment in favor of Plaintiff against Defendant, awarding Plaintiff such further declaratory and injunctive relief as may be just and proper under the circumstances.

10

**ANSWER TO PARAGRAPH 1 – 6 OF PRAYER FOR RELIEF**:   Defendant Hancock objects to the prayer for relief insofar as it makes no allegations specific to her. Defendant Hancock denies any wrongdoing, denies Plaintiff is entitled to any recovery, and further states that she should be entitled to her own attorneys' fees for defending this matter.

**AFFIRMATIVE DEFENSES**

**LICENSE AND CONSENT**

Plaintiff is likely "honeypotting" or "seeding" the Motion Picture as a means of encouraging BitTorrent users to download the allegedly copyright work. In doing so, Plaintiff provides an implied license for BitTorrent and other users, precluding it from claiming infringement.

**FRAUD/UNCLEAN HANDS**

If Plaintiff had any real interest in protecting its copyrighted materials, it would take more prophylactic actions to protect its copyright, rather than seeding, honeypotting or encouraging the dissemination of its allegedly copyrighted materials.  Plaintiff's failure to do so indicates it has no real interest in protecting its copyrighted materials, and in fact prefers that its materials be misused, as threatening/pursuing litigation is infinitely more profitable than the legal sale of the copyrighted material.

**MISUSE OF COPYRIGHT**

The purpose of the Copyright Act is to protect original works, not to misuse the Court system as Plaintiff and its related entities do to extort unreasonable and unsupportable sums from innocent victims.

11

## INNOCENT INFRINGEMENT

Defendant made attempts to provide Plaintiff with evidence of her innocence, evidence Plaintiff's counsel claimed he would "look into" but never followed up. If Hancock's IP address was used for infringement purposes it was without her knowledge or consent. Defendant is therefore an innocent infringer as she was not aware of, and had no reason to believe that her acts or omissions constituted infringement.

## FAILURE TO MITIGATE

Plaintiff has made no attempt to mitigate any actual or perceived damages, including but not limited to sending out DMCA take-down notices and taking additional reasonable steps not yet known to limit use of its allegedly copyrighted materials in the manner alleged in its Complaint.

## IMPROPER PURPOSE

Plaintiff states in paragraph 11 of its complaint that "additional information obtained in discovery will lead to identification of additional infringing parties, as monitoring of online infringement … is ongoing. Defendant submits that suit against one party for the purpose of determining the existence and/or identity of another party is an improper purpose for filing suit.

## BARRATRY AND MAINTENANCE

Upon information and belief, the attorneys and "experts" who file these claims have a prohibited interest in their outcome and the filing of such claims violates common law and criminal prohibitions on barratry and maintenance in Illinois.

## CLASS ACTION COUNTERCLAIM

### NATURE OF THE CLAIMS

1.      This is a putative class action brought on behalf of Defendant/Counter-Plaintiff/Third-Party Plaintiff Renee Hancock on behalf of all others similarly situated Illinois victims that arises from the conduct and business practices (the "Extortion Conspiracy") of Plaintiff/Counter-Defendant and Third-Party Defendants named in the related Third-Party Complaint herein.

2.      Plaintiff/Counter-Defendant Clear Skies Network ("CSN") and Third-Party Defendants German John Doe (a/k/a Daniel Macek a/k/a Darren M. Griffin), Michael Hierl ("Hierl") and Mark Cisek ("Cisek") have, and continue to, engage in a scheme and course of conduct frequently referred to as "copyright trolling."[1] The scheme requires that evidence of alleged infringement is presented to the Court as though it has been as procured by a purported "expert" through use of purported proprietary "geolocation technology." The individual/entity is named herein as "German John Doe(s)" because, upon information and belief, Plaintiff uses German corporations and/or German nationals, claiming they possess "expert qualifications" they do not, so as to complicate and discourage depositions and discovery. What is more likely is that the allegedly copyright material is honeypotted or seeded by CSN and/or the German John Doe. CSN and/or the German John Doe relies on "fake experts" and/or honeypots or seeds its Motion Picture for the express purpose of being able to claim that it has "caught" people downloading the copyrighted material.

---

[1] See Matthew Sag, *Copyright Trolling: an Emperical Study*, Iowa Law Review (2014) available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=2404950

3.      Co-conspirators' "evidence" is insufficient as a matter of law to establish infringement, and that evidentiary failure is known by all co-conspirators hereto at all times material, especially the lawyers filing the cases.

4.      CSN's existence has little to do with the protection of a copyright, and is instead an entity formed for the primary purpose of income generation through exploitation of the court system.

5.      Once German John Doe seeds/obtains the alleged "evidence," Hierl and Cisek file a form complaint in the Northern District of Illinois against a number of does, usually between 30 and 50 in a case, but against hundreds of defendants on the same date using the same form complaint.

6.      A few days after the case is filed, Hierl or Cisek then file a motion for early discovery, including a form declaration from purported "expert" Daniel Macek, Darren Griffin or some other alias of the German John Doe who claims to be a "consultant," "employee" or representative of a German John Doe entity (Guardaly, IPP, Excipio, Crystal Bay Corporation, etc.) requesting that Comcast provide the identities of the responsible billing party for the IP addresses their German John Doe alleges to have obtained through use of his/her "geolocation technology" but may have instead obtained through honeypotting or seeding. Upon information and belief, Co-conspirators herein have not made a single alleged "expert" witness available for deposition.

7.      Hierl then sends threatening and misleading form demand letters under the auspices of Federal Rule of Evidence 408.

8.      If an individual contacts Hierl or Cisek to discuss the matter, they are threatened with exaggerated damages and litigation costs in an effort to maximize "settlement" amounts.

9.      If Hierl and/or Cisek are not successful in threatening a Doe into settlement they amend their complaint to name the defendant individually.

10.     Thus, Plaintiff/Counter-Defendant and Third-Party Defendants, as co-conspirators, have obtained hundreds of thousands of dollars in "settlements" or default judgments and/or attorneys' fees and costs, from threatened and/or actual litigation against the estimated 360 Illinois victims of this particular Plaintiff's Extortion Conspiracy.[2]

**THE PARTIES**

11.     Defendant/Counter-Plaintiff Renee Hancock is a 62-year-old African American resident of the state of Illinois.

12.     Plaintiff/Counter-Defendant Clear Skies Nevada, LLC, ("CSN") is a Nevada LLC. Plaintiff claims it is a "motion picture developer and producer" and further claims to own the copyright to the movie *Good Kill*. The Nevada secretary of state provides a corporation filing date of 11/1/2013 and lists Voltage Productions, Inc., another Nevada LLC, as an officer. Upon information and belief, the entity is an alter-ego or front for the real party in interest, the Extortion Conspiracy described herein.

---

[2] Hierl's name is associated with 451 cases on the Illinois ECF system, a vast majority of them copyright troll matters filed for approximately 30 troll plaintiffs since 2012. Most cases name between 20 -40 Does. (Some name as few as a single Doe and some named as many as 110.) If Hierl is successful in reaching 20 Does in 400 cases, that is 8000 potential victims. If even half of those Does (4000) have paid Hierl half of average of his $3900 pre-litigation and $4900 post-litigation demand ($2200) that's $8.8 million dollars. (Declaration of Lisa L. Clay ("Clay Dec.") ¶ 13.) (Exhibit A hereto.)

13.     Third-Party Defendant Michael Hierl ("Hierl") is an individual licensed to practice law in the State of Illinois, and is a partner with the law firm of Hughes, Socol, Piers, Resnick & Dim. At all times relevant hereto, Hierl has represented this Plaintiff and countless other copyright troll plaintiffs in the Northern District of Illinois.[3]

14.     Third-Party Defendant Mark Cisek ("Cisek") is an individual licensed to practice law in the State of Illinois, and is an associate with the law firm of Hughes, Socol, Piers, Resnick & Dim. At all times relevant hereto, Cisek has represented this Plaintiff and countless other copyright troll plaintiffs in the Northern District of Illinois.

15.     Third-Party Defendant German John Doe (a/k/a Daniel Macek a/k/a Darren Griffin) is/are a German corporation(s) and/or German national(s), claiming they possess "expert qualifications" they do not, so as to complicate and discourage depositions and discovery. Upon information and belief, the German John Doe(s) has/have at various times been referred to by co-conspirators hereto and other troll plaintiffs as "Daniel Macek," "Darren Griffin," "Tobias Fieser" and "Michael Patzer" working for one or more of the following entities: "Crystal Bay Corporation," "IPP," "Gaurdaley," and "Excipio," among others."[4]

---

3 Hierl began filing copyright troll complaints in 2012. Since that time he has represented over 30 trolls in the Northern District, including, but not limited to Elf Man, LLC, RG Investments Group, Inc., LLC, R&D Film 1, LLC, Dragon Quest Productions, LLC, and the Plaintiff herein, among others. Declaration of Lisa L. Clay ("Clay Dec.") ¶ 14. All of these entities file form declarations from the same "experts," Daniel Macek and Darren Griffin. (Clay Dec. ¶¶ 3, 14, Ex. 3.) Except for provisions related to joinder, the names of the parties and certain facts about the movies (along with the fact that Plaintiff stopped providing address information for their clients) the complaints and exhibits for all plaintiff except for Elf Man LLC are identical in form and content. (Clay Dec. ¶ 14, Ex. 9.)

4 See examples of form declarations filed by Hierl, Cisek and other troll Plaintiff attorneys. (Clay Dec. ¶ 10, Ex. 3.) See also general research regarding Guardalay, IPP, Excipio, Crystal Bay

16.     This cause of action arises under the common law of Illinois. This Honorable Court has jurisdiction over the state law claims under the supplemental jurisdiction provisions of 28 U.S.C. § 1367.

17.     This Honorable Court has personal jurisdiction over this Counter-Defendant and these Third-Party Defendants because they all have significant minimum contacts with this jurisdiction. This Counter-Defendant and these Third-Party Defendants have operated and performed substantial business transactions, including but not limited to, the actions comprising the Extortion Conspiracy described herein, as well as employment of residents throughout Illinois and the Northern District of Illinois.

18.     Venue is proper in this Honorable Court under 28 U.S.C. § 1391(b). Counter-Plaintiff resides in the Northern District of Illinois, and all acts and omissions of Counter-Defendant and Third-Party Defendants subject occurred in the Northern District of Illinois.

**FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS**

19.     Counter-Plaintiff realleges the preceding paragraphs as though set forth fully herein.

20.     The film *Good Kill* was first shown at an Italian film festival in September of 2014, and first shown in the United States at a film festival in April of 2015. The film was not shown in wide release until May of 2015 and not available on DVD or other video formats until September 1, 2015.

21.     CSN is not registered with the Illinois Secretary of State and is not authorized to hire employees or transact business in the State of Illinois.

Corporation, Darren Griffin, Daniel Macek, Tobias Fieser and Michael Patzer (Clay Dec. ¶¶ 10 - 12; Exs. 3 – 8.)

22.     Since CSN filed its Certification of Registration in February of 2015, CSN, Hierl, Cisek and German John Doe(s) have been engaged in a conspiracy to monetize infringement whereby they use questionable means to entrap unsuspecting Illinois residents who have allegedly violated CSN's copyrights, and then extort money from these individuals using threatening and misleading settlement and litigation tactics under the guise of the Copyright Act. As to this Plaintiff troll only, this Extortion Conspiracy has already directly affected over 350 Illinois residents who have been threatened and intimidated into paying legally unsupported "settlements" or who have had legally meritless default judgments entered against them in Illinois federal courts.

23.     Upon information and belief, CSN, German John Doe(s), or one of his/her/their agents seeded a copy of *Good Kill* after copyright protection was requested, but before the movie was released in American theaters The date on CSN's Certificate of Registration is February 27, 2015. The first date of alleged infringement on an exhibit is April 4, 2015, at least a month before the movie was released in theaters.

24.     Upon information and belief, CSN and its co-conspirators intentionally released *Good Kill* into the bit torrent environment knowing, authorizing and inviting its copying and distribution.

25.     German John Doe(s), claiming to rely on the purported proprietary "geolocation technology" alleges to obtain evidence of infringement and drafts form declarations suggesting a complex technical basis for that "evidence." German John Doe has never described his/her/its alleged qualifications or described the "propriety nature" of this allegedly proprietary "geolocation technology."

26.     Hierl and Cisek, with the knowledge and consent of co-conspirators CSN and German John Doe, and more importantly, with the knowledge that evidence provided by German John Doe is insufficient to meet evidentiary standards, filed suit against 360 anonymous Does in seven cases filed on June 29, 2015 and eight cases filed on July 31, 2015.

27.     All fifteen of the complaints use the same form that Hierl and Cisek use for all copyright troll matters and the same "declaration" in support of their motion for early discovery.[5] None of the complaints are verified by CSN, its principals, nor any other witness. Each of the fifteen complaints attaches a form chart alleging to show the date and time of the alleged infringement – all occurring before the movie was in general release– also not verified.

28.     Upon information and belief, CSN does not pay for any of the services necessary to operate the Extortion Conspiracy, i.e. legal fees or the services of the "German John Doe" relied upon to provide purported evidence. Alternatively, if those payments are made, they are de minimus and intended solely for the purpose of evading claims of barratry and/or maintenance, and ethics violations resulting therefrom. Rather, CSN, the attorneys and the German John Doe have maintained contracts for the sole purpose of operating the Extortion Conspiracy described herein. The attorneys are provided substantial autonomy in identifying potential victims, deciding how much money and what other remedies to demand, negotiating payments, and whether to file an amended complaint if the demands are not met. Upon information and belief, CSN and Hierl have sent over 350 misleading and threatening form letters to Illinois residents since August or September of 2015.

---

[5] See Clay Dec. ¶ 10, Ex. 3 and Clay Dec. ¶ 14, Ex. 9.

29.     CSN, Hierl, Cisek and the German John Doe receive no compensation or di minimus compensation unless their efforts result in a "settlement" that can be divided between the members of the Extortion Conspiracy. Alternatively, Hierl, Cisek and the German John Doe receive de minimus payments from CSN that are intended solely for the purpose of evading claims of barratry and/or maintenance, and ethics violations resulting therefrom.

30.     While Hierl and Cisek do not limit their Extortion Conspiracy to minority victims, it appears they actively target minority victims with the belief that minorities often do not speak English as a first language and are therefore easier to intimidate; are more fearful of and less familiar with the legal system; and are less likely to obtain legal counsel.

### RENEE HANCOCK AND HER EXPERIENCE

31.     Renee Hancock maintained an internet account with Comcast at all times material hereto.

32.     She does very little on the internet, and her husband and two adult children deny any bit torrent or improper activity.

33.     At some point in 2015 the Hancocks notified Comcast that they were having difficulty with their router, and Comcast provided a replacement.

34.     No one in the household had ever heard of the movie *Good Kill* until they were notified of the instant allegations.

35.     When a letter arrived from Comcast suggesting that the identity of the Comcast account holder would be provided as part of ongoing litigation, no one in the household paid any attention or took any action.

36.     When the standard form letter from Hierl arrived in November of 2015, the family reviewed it and assumed it was a scam, as Renee had been approached by a debt collector in the recent past about an obligation that was not hers.

37.     The forms letters always claim that "[y]our contact information was supplied to us by your ISP as *one of the Defendant who has illegally obtained or shared our client's copyrighted motion picture through a peer to peer network…"* and suggesting to the recipient victim that they have "placed a media file which contains the copyright-protected film content for our client's motion picture *[insert film name here]* in a shared folder location on your computer…" The form letter goes on to suggest damages of up to $150,000 per work, "depending on the circumstances surrounding the infringement…" The letter demanded $3,800 pre suit and suggested that after a suit is filed "our client will accept no less than a sum of $4,800." The form letter makes reference to an out-of jurisdiction case, *Sony BMG Music Entertainment v. Tenenbaum* (D. Mass.) from 2007, involving a $675,000 jury verdict, and closes that paragraph by suggesting "[*w]e believe that by providing you with an opportunity to settle our client's claim for $3,900 instead of you incurring thousands of dollars in attorneys' fees and being at risk for a high jury verdict, our client is acting reasonably and in good faith*."

38.     Despite knowing their purported evidence and the "expert" who claims to present it are questionable at best and fraudulent at worst CSN, through co-conspirator Hierl, made false statements of material fact and law in their November 9, 2015 form demand letter. Specifically, it was untrue at the time and remains untrue that "information was provided to us by your ISP as one of the Defendants who has illegally obtained or shared our client's copyrighted motion picture through peer-to-peer network…" This sentence is misleading and

outright false for three reasons. First, "your ISP" has not provided any information other than the requested identity of their account holder. Second, all Counter-Defendants can ever claim to possess absent forensic review of a named-Defendant's computer and related devices is a PCAP file that may or may not establish that *someone using the IP address* – not the recipient of the demand letter – may have illegally obtained or shared. Third, upon information and belief, Plaintiff's are never in possession of evidence linking the PCAP file to a peer-to-peer network unless they honeypot or seed the film themselves.

39.     Despite knowing their purported evidence and the "expert" who claims to present it are questionable at best and fraudulent at worst, Hierl referenced a non-precedential jury verdict of $675,000 in his November 9, 2015 form demand letter solely for the purposes of threat and intimidation.

40.     A second letter from Hierl sent in February of 2016 was also assumed to be part of the scam, although it did prompt Renee's son to research Attorney Hierl.

41.     That internet research suggested that Hierl was a troll attorney, and based on advice on various blogs and websites, the Hancocks decided to ignore the letters.

42.     At some point in May of 2016 Hierl finally served Renee, through her husband, with a copy of the summons and complaint.

43.     Hierl filed a Motion for Default that was sent via federal express and reviewed by Renee the day before she was due in court, July 21, 2016.

44.     Renee Hancock and her husband Dwight both appeared at the hearing and suggested that their failure to file an answer was based on their belief that this was "fraud."

45.     Judge Kendall said she would give the Hancocks time to find an attorney and asked them to talk to Cisek in her attorney witness room.[6]

46.     Once in the room with Dwight and Renee, Cisek claimed that "his client" "needed" $4900 to settle the matter.

47.     Dwight quickly advised Cisek that wasn't happening, and offered to pay him $39.99, the cost of a DVD of the movie.

48.     Dwight and Renee attempted to show Cisek evidence that BitTorrent activity had been blocked from their router; evidence that the IP address in the Complaint was not theirs, and other evidence of their innocence. Their son DJ joined the conversation and attempted to explain the documents to Cisek.

49.     After Renee's son DJ joined the conversation Cisek became angry and confrontational, and kept suggesting that "his client" had "evidence." When DJ pushed about the information they had brought in hopes of discussing it with the judge, Cisek claimed he would "look into it."

50.     Cisek never followed up with the Hancocks about the information they had provided.

51.     At the next hearing, on August 3, 2016 the Hancocks had been unable to retain an attorney.[7]

---

[6] Judge Kendall informed the Hancocks that Cisek was "the one who filed the complaint against what was originally the IP address for the computer that downloaded the movie…" and that "he's got subscriber information for who has that computer, and it's you…" Judge Kendall's comments serve to highlight the success of Plaintiff's campaign of misinformation. Plaintiff's only "evidence" relates to the IP address assigned to Defendant Hancock, not to Hancock's computer.  And Plaintiff is not, and doesn't even claim, to have "subscriber information for who has that computer…" (See transcript from July 21, 2016 hearing, Clay Dec. Ex. 2.)

52. In open court Judge Kendall asked Cisek what his client was looking for. Despite knowing their purported evidence and the "expert" who claims to present it are questionable at best and fraudulent at worst, Cisek referenced six-figure awards solely for the purposes of threat and intimidation.

53. Judge Kendall reminded Cisek he would not be getting that, and again asked the parties to talk.

54. Once Renee realized she was being sued for something she didn't do, and that the Plaintiff was demanding sums of money she did not have, she immediately began to show the physical manifestations of stress in the form of headaches, high blood pressure and difficulty sleeping. She lacked the financial means to obtain proper medical treatment for her symptoms.

55. The Hancocks eventually obtained counsel, the undersigned, who appeared in court on September 26, 2016.

56. The parties were once again instructed by Judge Kendall to try to resolve the matter.

57. Attorney Cisek refused to provide a settlement number to the undersigned, and instead suggested that Renee's son DJ was the responsible party because of his "video game degree." (Clay Dec. ¶ 7.)

58. The undersigned reminded Attorney Cisek very pointedly of the financial position of this Defendant, and suggested that any settlement funds would be diverted from monies currently needed for medical treatment. Cisek was unmoved. *(Id.)*

---

7 One well-known copyright troll defense attorney claimed he needed $5000 to "get started," and pushed the Hancocks to pay him $3500 and offer something to settle. (Clay Dec. ¶ 5.)

59.     Instead, Cisek forwarded the undersigned the following email later that day:

Today you asked me to get you a settlement offer in the above-referenced matter. Our client would be willing to settle the above-referenced case against your client in exchange for a payment of $2,800.00, and your client agreeing to the standard language in our settlement demand. Payment would be due within ten days.

This offer represents a $2,100 reduction in the $4,900 offer our client made your client back in July.

Understand that if we have to brief a motion to dismiss or engage in discovery, our client will insist on raising its subsequent settlement demands to offset its raised costs.

(*Id*.)

60.     Despite knowing their purported evidence and the "expert" who claims to present it are questionable at best and fraudulent at worst, CSN, through co-conspirator Cisek, continued to demand sums in excess of the value of their alleged claim even after Defendant Hancock had professed her innocence, provided evidence to support same, notified Cisek and Hierl of serious medical conditions that she lacked the financial ability to address, and offered to pay for the value of the DVD.

61.     The Hancocks had no choice but to reject Plaintiff's offer for lack of ability to pay. (Clay Dec. ¶ 7.)

62.     Defendant Hancock continued to suffer signs of physical and emotional distress, including anxiety, headaches, high blood pressure and difficulty sleeping. Her symptoms remain untreated because she lacks the financial means to seek medical care.

63.     On or about December 19, 2016, several days after indictments of Paul Hansmeier and John Steele had been announced, Hierl approached the undersigned about settlement. Attorney Clay reminded Attorney Hierl that her clients had no money. Hierl

25

suggested, "[m]aybe we can work something out for those who don't steal with impunity." (Clay Dec. ¶ 8.)

64.     When the Hancock's were advised that Hierl had suggested, after all they had been through, that he was now willing to "work something out" the Hancocks were furious. Why, they wondered, had they been subjected to 18 months of stress and hassle? The Hancocks instructed the undersigned to investigate counterclaims and mechanisms for seeking compensation for Renee and other troll victims. (Clay Dec. ¶ 9.)

65.     Hierl and Cisek, throughtout these proceedings, despite knowing their purported evidence and the "expert" who claims to present it are questionable at best and fraudulent at worst, and despite knowing or having reason to know, upon reasonable inquiry, that declarations from German John Doe were questionable at best and fraudulent at worst, have continued to rely upon this "evidence" and "expert" in making statements of law and fact known to them to be untrue.

66.     Throughout these proceedings Hierl and Cisek made these statements with the intent to scare Renee Hancock and other Class members, and for the express purpose of extorting an unreasonably high and legally unsupportable "settlement" from Hancock and other Class members.

### COUNT I – CONSPIRACY TO IMPROPERLY PROSECUTE COPYRIGHT INFRINGEMENT

67.     Counter-Plaintiff realleges the preceding paragraphs as though set forth fully herein.

68.     At all times relevant hereto, Illinois recognizes a criminal cause of action for theft by deception and the lesser charge of deceptive practices. 720 ILCS 5/16 – 1; 720 ILCS 5/17-1.

69.     At all times relevant hereto, Illinois recognized a criminal cause of action for barratry. 720 ILCS 5/32-11. The statute requires the suspension of any attorney convicted of the offense.

70.     At all times relevant hereto, Illinois recognized a criminal cause of action for maintenance. 720 ILCS 5/32-012.

71.     Co-conspirator CSN, individually and through its agents, knowingly and with intent was a participant in the actions described herein.

72.     Co-conspirator German John Doe(s), individually and through his/her/their agents, knowingly and with intent, was/were a participant(s) in the actions described herein.

73.     Co-conspirator Michael Hierl, knowingly and with intent, was a participant in the actions described herein.

74.     Co-conspirator Mark Cisek, knowingly and with intent, was a participant in the actions described herein.

75.     The purpose of the Extortion Conspiracy was to create the appearance of a lawful purpose – prosecution of alleged copyright infringement.

76.     The presumed lawful purpose was being undertaken by unlawful means, i.e. theft by deception.

77.     The presumed lawful purpose was being undertaken by unlawful means, i.e. barratry.

78.     The presumed lawful purpose was being undertaken for unlawful means, i.e. maintenance.

79.     In the furtherance of their purported lawful purpose (prosecution of copyright infringement) these co-conspirators, each one individually and all collectively, actually have committed and presumably continue to commit the unlawful acts of theft by deception, barratry, and maintenance.

80.     Each co-conspirator named herein was a knowing and willing participant in a scheme to commit theft by deception from Counter-Plaintiff as well as others similarly situated. Participants in the Extortion Conspiracy named herein have wrongfully obtained substantial sums of money from the scheme. Counter-Plaintiff and others similarly situated have been damaged by the Extortion Conspiracy and its co-conspirators.

81.     Said Extortion Conspiracy was a scheme employed time and time again for the same or similar purpose and seeking the same result (prosecution of copyright infringement) through unlawful means (theft by deception, barratry and maintenance).

82.     Due to their course of conduct, Counter-Defendant and Third-Party Defendants have engaged in a civil conspiracy to commit theft by deception, barratry and maintenance.

83.     Therefore, Counter-Plaintiff seeks monetary damages on behalf of herself and all others similarly situated within the State of Illinois.

WHEREFORE, Counter-Plaintiffs respectfully request that this court order damages resulting from this fraud as follows:

(a)     actual monetary damages in an amount to be determined at trial;

(b)     punitive damages in an amount to be determined at trial;

(c)     all costs and attorney's fees;

(d)     any additional amounts the court deems just and reasonable.

## CLASS ACTION ALLEGATIONS

84.     Counter-Plaintiff realleges the preceding paragraphs as though set forth fully herein.

85.     This action is brought and may proceed as a class action, pursuant to the Federal Rules of Civil Procedure 23(a).

86.     Counter-Plaintiff seeks certification of a Class composed of and defined as follows: **CLASS:** All individuals in the State of Illinois who, at any time on or after the day four years prior to the date on which this Class Action Counterclaim is filed, received correspondence which was the same or similar to the November 9, 2015 letters sent by the Third-Party Defendant, Michael Hierl, regarding alleged copyright infringement on behalf of his client, Clear Skies Nevada, LLC.

87.     The members of the Class are known to exceed 300 individuals and are so numerous that joinder of all members is impracticable.

88.     There are questions of law and fact common to the members of the Class that predominate over questions affecting only individuals. These common questions include:

(a)     Whether the Extortion Conspiracy alleged constitutes a civil conspiracy under Illinois law;
(b)     Whether Counter-Plaintiff and the members of the Class suffered losses as a result of the alleged Extortion Conspiracy;
(c)     What relief Counter-Plaintiff and the members of the Class are entitled to under Illinois law.

89.     Counter-Plaintiff's claims are typical of claims of the members of the Class that she represents because all such claims arise out of the same policies, practices, and conduct, and the same or similar documents used by the Extortion Conspiracy members in their dealings with Counter-Plaintiff.

90.     Counter-Plaintiff's interests are aligned with those of the Class.

91.     The Class is readily identifiable.

92.     Counter-Plaintiff will fairly and adequately protect the interests of the Class and has retained competent counsel experienced in the prosecution of consumer litigation. Proposed Class Counsel has researched and investigated copyright troll claims and related "monetization of litigation" schemes for nearly three years. Proposed Class Counsel has experience in handling complex litigation and claims of the type asserted here.

93.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. While the economic damages suffered by the individual members of the Class are significant, the amount is modest compared to the expense and burden of individual litigation.

94.     The questions of law or fact common to the members of the Class predominate over any questions affecting only individual members.

95.     The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications, which would establish incompatible standards of conduct for the Extortion Conspiracy members. Prosecution as a class action will eliminate the possibility of repetitious litigation.

96.     Extortion Conspiracy members have acted similarly toward Counter-Plaintiff and all Class members, thereby making a final judgment as to liability and damages with respect to the Class as a whole appropriate.

97.     A class action will cause an orderly and expeditious administration of the claims of the Class, and will foster economies of time, effort and expense.

98.     Counter-Plaintiff does not anticipate any difficulty in the management of this litigation.

**WHEREFORE**, Renee Hancock on behalf of the class outlined above, respectfully request that upon the filing of an appropriate Motion for Class Certification this Court enter an order:

(a)     Certifying the Class described above;

(b)     Appointing Renee Hancock class representative;

(c)     Appointing the undersigned as counsel for the named classes;

(d)     Any and all other relief the Court deems just and reasonable.

**JURY DEMAND FOR COUNTERCLAIM**

Respectfully submitted,

_____/s/_ Lisa L. Clay_____

Lisa L. Clay, Attorney at Law
345 North Canal Street, Suite C202
Chicago, Illinois 60606
Phone: 312.753.5302
lclayaal@gmail.com
ARDC # 6277257

**CERTIFICATE OF SERVICE**

Lisa L. Clay, an attorney, certifies that on January 2, 2017 she filed a copy of the foregoing

*Defendant Renee Hancock's Answer, Affirmative Defenses and Class Action Counterclaim in*

*Response to Plaintiff's Amended Complaint for Copyright Infringement* via the ECF filing system,

which will provide notice to the following:

mhierl@hsplegal.com

tparkhurst@hsplegal.com

mcisek@hsplegal.com

_____/s/  Lisa L. Clay_____