# EXHIBIT 4



# Fight © Trolls

**Do your duty, result is a bonus**

Home Discussions Cases to watch Resources Reference

GUARDALEY

# Devil's cookbook: Guardaley's presentation

While covering copyright trolling in the US, media almost always avoids questioning who really directs the show. Press follows usual court reporter templates: there is a plaintiff who hires an attorney and/or investigator, and both work for a flat or hourly fee. Sometimes attorneys' names don't appear in news articles at all. In reality, the overwhelming majority of shakedown lawsuits has been initiated by German "anti-piracy" cartels. As you will read in the documents below, it is them who scout around for plaintiffs and opportunistic lawyers, it is them who handle logistics and, of course, reap the lion's share of settlement proceeds.

Recently I stumbled upon an interesting presentation created by someone named Gerephil Molina from Cebu, Philippines. This presentation describes the inside operations of an infamous German copyright troll Guardaley (and its various facades, for example, IPP international — Lipscomb/Malibu Media's "engine," or the subject of this post — Anti-Piracy Management Company)¹.



Patrick Achache

You can watch this Anti-Piracy Management Company Presentation on the Prezi site (Flash-based) [The *original presentation* was hastily removed on 4/21/2014 — scroll down to see update], or read the pdf embedded below: I spent a couple of hours creating this document in a premonition that Prezi's material will be removed — once visitors from Karlsruhe show up in my blog's log. Content wise, it should be exactly the same as the original presentation (sans graphics, which is meaningless anyway).

This presentation does not look like a final product; and I'm still not sure who the target is. It looks more like an operations manual for the BPO Cebu office, yet the trolling technology description is definitely obtained from the original source — Guardaley. I have a feeling that it was not intended for public eyes.

There is a little doubt that one of Guardaley's key players, Patrick Achache is behind this particular Guardaley's incarnation (Anti-Piracy Management Company — APMC). Another Guardley-connected name that appears in this playbook is Daniel Macek (p. 35), an "expert" in some US cases, in particular, a potentially fraudulent *Elf-Man LLC, v. Lamberson* (the other "expert" in this case is Michael Patzer, who played his small role in the Bellwether vaudeville nearly a year ago).

I put quotation marks around "expert" not only because of my "biased opinion": as we see in the presentation (p. 35 — emphasis is mine), I'm not the only one who questions this expertise:

> paragraph 2 in regards to software consultant (i.e., he can talk about software issues), & **we're hoping the judge won't question his qualifications too much**.

I will not go over the statements and bullet points: they speak for themselves. The overall air is rather dry, business-like, cynical, which is not surprising: it's a business based on exploiting the letter of the law, with little, if any, thought about the irreparable harm to thousands of families. Similar to how the military-industrial complex monetizes war, cartels like Guardaley monetize infringement, but in reality both thrive on suffering of others.

The stated goal of "ending the infringement" is laughable: no sane businessman wants the source of income to dry out.

I hope that defense lawyers ("bad guys," according to the trolls, p. 5) will find some points that can be used in the ongoing fight against the copyright trolling plague.

# EXHIBIT 5

Merry Christmas! Techdirt is on a reduced posting schedule for the holidays. We'll be back to our normal routine in the new year.

 **techdirt**

Search Techdirt    [Search]

Techdirt    Wireless News    Innovation    Case Studies    Startups    Net Neutrality    **Techdirt Deals!**    Preferences    Register    Sign In
Main    Submit a Story    RSS

**PODCAST**  ▶  Techdirt – Is The Internet Of Things The Future, A Total Mess, Or Both?    SOUNDCLOUD

<< Pentagon Gets Busy Trademarking After Seeing...    ᴛ    US Marshals Step In To Keep Florida Police... >>

## International Men Of Mystery: How Discredited German 'Anti-Piracy' Company May Secretly Be Behind Malibu Media's Copyright Trollery

from the *well,-look-at-that* dept

**Copyright**
by Mike Masnick
Wed, Jun 4th 2014
10:00am

Filed Under:
champerty,
copyright trolls,
daniel macek,
elf-man, michael
patzer, patrick
achache, shell
companies, tobias
fieser
Companies:
apmc, excipio,
guardaley, ipp,
malibu media

Permalink.
Short link.

Things have been getting more interesting on the **Malibu Media** front lately. The company, which is responsible for **40%** of all copyright cases, has certainly faced claims of **abusive** and **seriously questionable** practices. But some new information suggests it goes much further down the rabbit hole of questionableness. Like **Righthaven** and **Prenda** before it, new accusations are coming out about some highly questionable shell games to try to hide what's really going on.

In this case, it's come out that behind all of Malibu Media's shady tactics, the folks actually pulling the strings (or, at least, heavily involved) may be the German company **Guardaley**, or one of its many sneaky shell companies. If you've been following copyright trolls for a while, you may recognize Guardaley as the shady company involved (secretly) in some of the original copyright trollery in the US, which **was slammed in court** for *highly* questionable technology that was at the center of its attempts to "identify" people to go after in the shakedown scam known as copyright trolling.

Guardaley had been laying low for a while, but back in April, Sophisticated Jane Doe over at FightCopyrightTrolls turned up **Guardaley's secret playbook**, which was clearly not meant for public consumption. It is... quite a read. It highlights the various shell games and individuals involved -- and also notes how Guardaley can quickly churn out cookie cutter legal filings against the various individuals it "sues" (with the entire effort actually focused on getting people to pay them to go away). And, astoundingly, it basically admits that Guardaley will supply bogus "experts" to support the claims in court. From page 35 of the presentation:

> • paragraph 2 in regards to software consultant (i.e., he can talk about software issues), & we're hoping the judge won't question his qualifications too much.

Okay, now jump back to January, in which one of the lawyers representing Malibu Media admitted that the "expert" company it uses, **IPP (a Guardaley shell)** worked **"pursuant to an oral contingency fee."** In other words, it was getting a cut of any money secured via these lawsuits and corresponding shakedowns. That's kind of a big deal: when your "expert witness" has a direct financial stake in the outcome, that means your expert witness is doing something very, very shady. No wonder Guardaley doesn't want the judges to question them too much.

For the past few months there had been some ongoing efforts to get various Malibu Media lawyers to reveal the details of their relationship with Guardaley/IPP and other related shells. Not surprisingly, Malibu Media lawyers are trying to block all of that. This finally resulted in an impressive filing from copyright troll fighter, lawyer Morgan Pietz, who **accuses the company of champerty** -- a scheme to "buy into" lawsuits, something that is at the very least frowned upon, but more frequently against the law. Furthermore, Pietz notes that Malibu Media should have been proactively disclosing Guardaley's interest in the cases, but has not -- instead highlighting how the company (actually, its lawyers) has been "fighting tooth and nail all attempts by defendants to inquire about these arrangements." He even calls Guardaley "the German computer guys."

Separately, the filing dismantles Malibu's bizarre attempt to avoid this whole issue by blaming it on some other guy in Florida.

> Malibu concedes that it did [disclose this information] here, and counsel on the pleadings here in Maryland concludes that there could not possibly be any kind of breach of this duty because lead national counsel in Miami, not counsel here, negotiated the improper witness contingency agreement. Regardless of what local counsel here did or did not know, lead counsel in Miami, whose firm presumably authored the early discovery papers in the first instance, and who participated in the consolidated proceedings in this district before Judges Titus and Grimm, had a duty to make sure this fact was disclosed to the Courts here and across the country.

The filing then goes into significant detail about the whole mess, under the wonderful title:

**Insider Shop - Show Your Support!**

**READ POSTS EARLY, JOIN THE INSIDER CHAT & MORE**
**INSIDER SHOP**    SUPPORT US

Advertisement



Pintas & Mullins Law Firm
ATTORNEYS FOR INJURED PERSONS

Nursing Home Abuse
ATTORNEYS

Get a Free Case Review ▶

Report this ad   |   Hide Techdirt ads

**Essential Reading**

**Hot Topics**

5.3  Obama Administration Looking To Expand Definition Of 'Critical Infrastructure' To Hit Back At Russians

5.2  NYPD Officers Search Wrong Home; Post Photos Of Handcuffed Family To Snapchat

5.2  Microsoft Finally Admits Its Malware-Style Windows 10 Upgrade Sales Pitch Went Too Far

**New To Techdirt?**

*Explore some core concepts:*

The Future Of Music Business Models (And Those Who Are Already There)

Saying You Can't Compete With Free Is Saying You Can't Compete Period

Infinity Is Your Friend In Economics

read all »

**Techdirt Deals**



BUY NOW

Merry Christmas! Techdirt is on a reduced posting schedule for the holidays. We'll be back to our normal routine in the new year.    

The "software with a name nobody seems to know" involves constantly changing claims about what software is being used to identify people accused of infringement, along with the claims that this unnamed and ever-changing software is somehow infallible (despite Guardaley's tech being so discredited previously). In an amusing section, Pietz points out how quite clearly "fallible" the technology is:

> In the letter Malibu submitted to Judge Titus and Judge Grim last year, they argued that IPP's proprietary software was literally "infallible." ... In the opposition to the instant motion, Malibu submits a declaration from Michael Patzer where he avers that "the PCAPs recorded the IP address 76.100.228 [sic] infringing Plaintiff's copyrights." That is incorrect. Mr. Patzer left out three digits in that IP address. This simply goes to show that no matter how "infallible" Malibu and Patzer think the software and corresponding proprietary system they designed may be, there is always room for human error, at either the input stage, or the output stage.

The filing highlights the similarities of these shell companies with the recent ruling against Prenda, and highlights increasing evidence of how the people above are really deeply involved in a bunch of shell games. It calls out evidence in a non-Malibu Media case, Elf-Man LLC v. Lamberson, which lays out more evidence of an incredible circle of shell companies. I won't repost it here, but it's worth reading, just to see some of the crazy chain of shell companies. This is not the whole chain of crazy, but *just a snippet*:

> As the defendant's own investigation revealed in Elf-Man, Crystal Bay Corporation, the company Macek (and Patzer?) supposedly "worked for" ... was a defunct South Dakota corporation, apparently incorporated in 2012 by a disbarred lawyer who, according to his website, "now specializes in creating 'anonymous' 'shelf' corporations." .... The official address Crystal Bay Corporation registered with the South Dakota Secretary of State? It belongs to a mail forwarding company, and it is the same address given for the disbarred lawyer's "Agent Services" company.... Same thing with the Stuttgart, Germany address given for Patzer and Macek: it corresponds to an office building in Stuttgart "that offers mail drop services and short term office rents, even by the hour." ... The Elf-Man defendant also investigated the phone numbers given for Patzer and Macek. The regional code for Macek's number corresponded to Karlsruhe, Germany. The regional code for Patzer was for a suburb of Karlsruhe....
>
> The coup de grace from Elf-Man: when defense counsel there recently called the (Karlsruhe) phone number given for Macek in the initial disclosures in that case, the person on the other end of the line answered it "Guardaley."

Boom. Also, there's the part in which one of the guys admits he works for one of these shell companies and then has to be lead by Malibu Media's lawyer into saying he didn't actually work for the company:

> More importantly, the testimony Malibu complains Pietz omitted only further supports the argument that Guardaley = IPP = Excipio, and that Patzer, Fieser, and Macek are all part of the same organization. For starters, at the beginning of Patzer's testimony, he first says "yes" when asked if he works at IPP Limited.... Malibu's counsel then asks him a leading question, reminding him that "you don't actually work for IPP, Limited. You said you work for a firm that provides these services to IPP, Limted, correct?" and Patzer confirms that.... However, throughout Patzer's testimony, he constantly refers to "we" when it is clear he is referring to IPP. None of that suggests that Excipio is really a totally different company that should be credited as possibly more trustworthy than Guardaley; it suggests Patzer thinks of himself as working with Fieser at IPP.

And, of course, days after this was filed, the lawyer who had been representing the copyright holders in Elf-Man, Maureen VanderMay, suddenly filed a motion to withdraw as counsel, noting that "issues have arisen between Plaintiff's representative and counsel, the nature of which make it impossible for counsel to both continue with representation and comply with the governing rules of professional conduct." However, she refuses to detail those reasons, citing their "privileged and confidential nature," though says that if required to, she would like to do so under seal. It's not too difficult to put two and two together here, suggesting the likely issue is that VanderMay realized how much trouble everyone involved in this scheme may be in soon. And, anyone who witnessed both the Righthaven and Prenda debacles knows that random outside lawyers who help out are the first ones often thrown under the bus in these disputes.

There have been stories for quite some time suggesting Malibu Media was, in some ways, worse than Prenda. Now, it appears that it may have been Guardaley and its rotating crew of shell companies behind all of this all along -- something they'd mostly been able to keep quiet. However, it looks like the scheme may be starting to unravel. Now, we just need Pietz to put together one of his infamous org charts like he did with Prenda.

To print the document, click the "Original Document" link to open the original PDF. At this time it is not possible to print the document with annotations.

EXHIBIT 6

Happy New Year! We're off today and back to normal tomorrow. Until then, check out our New Year's message and top comments of the year. ☒



Search Techdirt    [Search]

Techdirt    Wireless News    Innovation    Case Studies    Startups    Net Neutrality    **Techdirt Deals!**    Preferences    Register    Sign In

Main    Submit a Story    🔲 RSS

**Follow Techdirt**

::: **PODCAST** ▶    Techdirt – Is The Internet Of Things The Future, A Total Mess, Or Both?    🎧 SOUNDCLOUD

<< Convicted 'Eco-Terrorist' Released From Prison...    🔀    Portland (The City) And Pabst (The...Beer?)... >>

## Judge Awards $100k In Attorney's Fees Over Copyright Trolling, But Downplays Fraud Aspects

from the *too-bad* dept

**Copyright**
by **Mike Masnick**
Mon, Jan 12th 2015
3:05pm

Filed Under:
**attorneys' fees,
chris lynch,
copyright troll,
copyright trolling,
elf-man, ryan
lamberson**
Companies:
**apmc, crystal bay
corporation,
elf-man llc,
excipio, guardaley**

**Permalink.
Short link.**

We've written a few times about how the film *Elf-Man* was used in some copyright trolling shakedowns, mostly focusing on some documents that came out in the case of Elf-Man v. Ryan Lamberson, revealing how a German anti-piracy company which keeps changing names and identities appeared to be behind not just that case, but many, many, many copyright trolling cases. The lawyers for Lamberson, mainly Chris Lynch, had uncovered a ton of information detailing how this German operation, referred to as APMC, but also called APMC, Excipio, IPP, Crystal Bay Corporation, and a variety of other names, really runs the copyright trolling operations, finding lawyers and copyright holders to basically act as fronts. The Germans provide "experts" who pretend that the software used to track down people to shakedown is somehow infallible, but the experts have no credentials, and the "software" is very, very questionable. In a filing earlier this year, some of the web of deceit was revealed:

> As the defendant's own investigation revealed in Elf-Man, Crystal Bay Corporation, the company Macek (and Patzer?) supposedly "worked for" ... was a defunct South Dakota corporation, apparently incorporated in 2012 by a disbarred lawyer who, according to his website, "now specializes in creating 'anonymous' 'shelf' corporations." .... The official address Crystal Bay Corporation registered with the South Dakota Secretary of State? It belongs to a mail forwarding company, and it is the same address given for the disbarred lawyer's "Agent Services" company.... Same thing with the Stuttgart, Germany address given for Patzer and Macek: it corresponds to an office building in Stuttgart "that offers mail drop services and short term office rents, even by the hour." ... The Elf-Man defendant also investigated the phone numbers given for Patzer and Macek. The regional code for Macek's number corresponded to Karlsruhe, Germany. The regional code for Patzer was for a suburb of Karlsruhe....

> The coup de grace from Elf-Man: when defense counsel there recently called the (Karlsruhe) phone number given for Macek in the initial disclosures in that case, the person on the other end of the line answered it "Guardaley."

In the specific case, Lynch has been trying to recover attorney's fees from Elf-Man, asking for about $220,000. Elf-Man's lawyers countered with $5,000 in a **series of emails** [pdf] that are fairly amusing, with Lynch pointing out that the longer Elf-Man drags this out, the more that's likely to be revealed about Guardaley and the various German individuals behind it. Apparently, they decided to take their chances, insisting $5,000 was its final offer.

The judge in the case, Thomas Rice, has now granted **around $100,000 in attorney's fees,** showing that the $5k counter was a joke. This is a pretty big win, certainly. I'm sure that "Elf-Man LLC" and the various German troll puppet masters didn't expect to have to pay out $100,000 when they started this particular shakedown process. However, it is still a bit disappointing that the judge basically ignores all of the shenanigans uncovered about the German puppet masters and declares that part of the research unrelated and cuts it out of the fees to recover. As Fight Copyright Trolls notes, it's not surprising that the judge reduced the final amount owed -- as that happens frequently -- but it was still a bit disappointing that he brushes off the questionable behavior behind the lawsuit in the first place:

> Third, this Court excludes all hours that are "excessive, redundant, or otherwise unnecessary," from Defendant's proposed award.... Defendant's counsel spent over 200 hours investigating whether there is a "real party in interest" other than Elf-Man, LLC; researching the involvement of foreign third parties, such as Guardelay and APMC; researching whether Mr. Griffin, an investigator in numerous other BitTorrent cases, is fictitious, and thus perpetrating a fraud on the judicial system; and investigating whether Vision Films was a necessary party. Mr. Lynch alone logged over 180 of these hours, primarily investigating whether the potentially fraudulent investigator Mr. Griffin had committed a fraud on the court in other cases. Because this case was voluntarily dismissed before the relevance of these pursuits became clear, this Court is unable to determine that such tasks were

**Insider Shop - Show Your Support!**

READ POSTS EARLY, JOIN THE INSIDER CHAT & MORE
::: **INSIDER SHOP**  SUPPORT US ▶

**Advertisement**



UP TO
**32X**
BETTER
CELLULAR
COVERAGE

Boost your cell signal
up to **32X** in your
home or vehicle

SHOP NOW    ...:: we**boost**

*Report this ad*  |  *Hide Techdirt ads*

**Essential Reading**

**Hot Topics**

6.1    Company Bricks User's Software After He Posts A Negative Review

5.2    So WikiLeaks Is Evil For Releasing Documents... But DynCorp Gets A Pass For Pimping Young Boys To Afghan Cops?

5.1    Oversight Board Spares NYPD's Feelings By Softening Language In Taser Complaint Report

**New To Techdirt?**

*Explore some core concepts:*

Step One To Embracing A Lack Of Scarcity: Recognize What Market You're Really In

Advertising Is Content; Content Is Advertising

If Intellectual Property Is Neither Intellectual, Nor Property, What Is It?

*read all »*

*Report this ad*  |  *Hide Techdirt ads*

**Techdirt Deals**

**Techdirt Insider Chat**

**Jeffrey Nonken:** Awesome!

**Christopher Best:** I'm sorry Mike, I couldn't help it

**BentFranklin:** http://www.cracked.com/personal-experiences-2418-the-standing-rock-hacks-cracked-unravels-real-conspiracy.html
http://www.computerworld.com/article/3147031 /apple-ios/apple-doesnt-just-want-to-control-your-car.html
http://www.theregister.co.uk/2016/12 /06/parallel_construction_lies_in_english_courts/

Happy New Year! We're off today and back to normal tomorrow. Until then, check out our New Year's message and top comments of the year.

*properly be characterized as excessive and not reasonably billed to a client.*

While I absolutely understand why Judge Rice did this, it's a big part of the reason why these guys keep getting away with this crap. Every time their questionable practices, fake people, shell companies, etc. are called out, they cut and run, dismissing cases and heading for the hills. Sure, in this case they'll still have to pay $100k, but it's not really related to these activities that appear to be fraud on the court. They'll just move on to new shell companies, new shady lawyers and other questionable behavior. These guys have figured out that as long as they run away fast enough they may have to sometimes pay one of these attorney's fees rewards, but so many other people are falling for the shakedown game that it's still likely to be quite profitable.

> To print the document, click the "Original Document" link to
> open the original PDF. At this time it is not possible to print the
> document with annotations.

**17 Comments | Leave a Comment**



GET A FREE 1-YEAR SUBSCRIPTION TO THE TECHDIRT CRYSTAL BALL WHEN YOU SIGN UP FOR VPN SERVICE FROM PRIVATE INTERNET ACCESS »

GET EARLY ACCESS TO TECHDIRT POSTS & PROTECT YOUR ONLINE PRIVACY WITH TOP-RATED VPN SERVICE

*Hide Techdirt ads*

**If you liked this post, you may also be interested in...**

- Prenda's Paul Hansmeier Now Under FBI Investigation For His ADA Lawsuits
- Copyright Troll Ordered To Pay $17k To 'Pirate' It Falsely Accused
- Take Note: Copyright Troll Gets Stiff Response From Someone It Tried To Bully, Immediately Runs Away
- Zee Germans Are Coming: German Copyright Troll Announces Plans For Anti-Piracy Surge In The UK
- Once Again, As Details Of Questionable Copyright Trolling Practices Come To Light, Troll Desperately Tries To Run Away

## Reader Comments

View by: **Time** | **Thread**                                              Subscribe: **RSS**

 **sophisticatedjanedoe** (profile), *12 Jan 2015 @ 2:40pm*          · · FW LW

Happy New Year! We're off today and back to normal tomorrow. Until then, check out our New Year's message and top comments of the year.

I'd bet it's a coincidence, although some trolls were caught being somewhat creative (e.g., Prenda's "Under the Bridge Consulting").

Around 200 declarations signed by "Griffin" were filed nationwide in 2012-2013 by a dozen of attorneys. It's way more impudent than Prenda's use of Alan Cooper's name.

[ reply to this | link to this | view in chronology ]

 **Anonymous Coward**, *12 Jan 2015 @ 3:27pm*

'it was still a bit disappointing that he brushes off the questionable behavior behind the lawsuit in the first place:'

maybe where the other $120,000 went?

[ reply to this | link to this | view in chronology ]

 **Anonymous Coward**, *12 Jan 2015 @ 3:36pm*

I guess fraud and making false statements in court isn't a crime in Germany.

[ reply to this | link to this | view in chronology ]

 **Anonymous Coward**, *12 Jan 2015 @ 3:45pm*

**Re:**

Sure it is... if it's a German court.

It's generally not a crime to make false statements in someone else's court.

The trick will be to follow the money -- at some point money had to change hands, and if someone can track this down, it suddenly becomes an issue in BOTH German and US courts (as business was conducted in both countries that is likely fraudulent).

The problem right now is that they run fast enough that nobody gets near the money during investigation.

[ reply to this | link to this | view in chronology ]

 **ltlw0lf** (profile), *12 Jan 2015 @ 4:14pm*

**Re: Re:**

*It's generally not a crime to make false statements in someone else's court.*

It actually is. The problem is that the US court system has generally ignored all but the most egregious cases of perjury.

*The problem right now is that they run fast enough that nobody gets near the money during investigation.*

The problem right now is that the courts tend to treat the trolls, especially ones making a lot of money for the courts, as more important and more incorruptible than those of citizens even when those trolls turn out to be more crooked than a horizontal pole.

[ reply to this | link to this | view in chronology ]

 **Anonymous Coward**, *12 Jan 2015 @ 9:03pm*

**Re: Re: Re:**

I agree with what you said, but the problem I have with the trolls and the courts is that there are courts and judges across the country that are very troll friendly and the trolls use this to their advantage.

There have been some states and the judges in them that have taken the trolls to task for their filings and actions taken in those cases.

The mere fact that the trolls can drag some poor ISP subscriber into a lawsuit and expend as little as money possible in filing the suit while the defendant is forced to spend money to defend them self or risk a default judgement shows how the deck is stacked against the defendant.

The trolls use these lawsuits to exert pressure on a defendant if they choose to fight the lawsuit with a lawyer or if they choose to act on their own.

The trolls know they will run up a defendant's legal fees if they drag it out by asking for discovery, asking for the hard drives, wanting to question everyone in the household, wanting to examine any storage devices and on and on and on, and all the while the defendants costs go up the more his lawyer has to respond to the inquiries from the trolls.



Happy New Year! We're off today and back to normal tomorrow. Until then, check out our New Year's message and top comments of the year.

Until the Judges in the jurisdictions where these cases are filed start to crack down on the trolls and these type of lawsuits, the trolls will just refine their methods so they don't end up facing fee awards.

It's sad just how the system is rigged against the defendant in these trolls lawsuits, and the lawyers filing these suits know this and are using it to their advantage as there is a lot of money to be made in the troll lawsuit game (the Prenda gang is a perfect example of how profitable it can be )

[ reply to this | link to this | view in chronology ]

**Anonymous Coward**, *12 Jan 2015 @ 11:40pm*

**Re:**

Considering how many false statements have happened under Oath in Congress, there's no room to take the moral high ground.

[ reply to this | link to this | view in chronology ]

**Anonymous Coward**, *13 Jan 2015 @ 1:07am*

**Re:**

It's not a crime in America either depending on who you are. Take Eric Holder for example.

[ reply to this | link to this | view in chronology ]

**Anonymous Coward**, *12 Jan 2015 @ 4:56pm*

Bawk! Bawk!

[ reply to this | link to this | view in chronology ]

**That One Guy** (profile), *12 Jan 2015 @ 5:27pm*

Now, here's the $100,000 question:

What happens if they *refuse to pay*?

Having a ruling against them is nice, but ultimately completely useless if there's absolutely no penalty for them ignoring it.

[ reply to this | link to this | view in chronology ]

**retrogamer** (profile), *12 Jan 2015 @ 6:23pm*

**Re:**

Probably nothing, Prenda are STILL running from judgments and have moved into ADA lawsuits.

[ reply to this | link to this | view in chronology ]

**That One Guy** (profile), *12 Jan 2015 @ 7:39pm*

**Re: Re:**

Unfortunately, that's pretty much what I expect will happen. They'll ignore the ruling against them, change names again, and just keep on doing what they've been doing.

[ reply to this | link to this | view in chronology ]

**Anon E. Mous** (profile), *12 Jan 2015 @ 7:38pm*

I would be of the belief that we will see the trolls take a page out of the Prenda playbook and try to deny, deflect, and delay any attempts to have to pay the fee award. Lowe's attempt with comedy by the way of offering a 5k sympathy fee payment ought to only encourage Lynch/Lamberson to keep the trolls feet to the fire.

I would be of the opinion that we will hear claims of how their client can't pay, and there is no assets and bla bla bla. The bad thing I see in Rice's ruling is that I see no mention of any of the Plaintiff attorneys being held accountable to pay any of the fees which is a shame really.

Now Elf-MAN LLC is going to be the one tagged to pay the fee award, but of course there will be appeals and delays and the usual run around, but I see trouble on the Horizon much like the Prenda gang had with AF Holdings.

Elf-MAN LLC has taken a lot of settlements in from it's various cases all over the U.S., and has a lot of actions still pending, which means it has earned and still has the potential to receive monies from settlements and judgement's

**Case: 1:15-cv-06708 Document #: 65-4 Filed: 01/03/17 Page 12 of 26 PageID #:591**

Happy New Year! We're off today and back to normal tomorrow. Until then, check out our New Year's message and top comments of the year.

If they try and pull a Prenda. sooner or later they are going to have to answer some questions and trot out a face to answer those questions ( much like when Paul Hansmeier did the Prenda two-step at the AF Holdings deposition ) and we all know how well that went for the Prenda gang....Well the gang at ELF-MAN LLC could be in the same predicament

[ **reply to this** | **link to this** | **view in chronology** ]

**Anonymous Coward**, *13 Jan 2015 @ 1:05am*                    + | + | FW | LW

how exactly are they going to be forced to pay 100K? Won't they just dissolve whatever fake company they are currently pretending to be and just vanish from the public eye while reforming as a new fake company?

[ **reply to this** | **link to this** | **view in chronology** ]

**Anonymous Coward**, *13 Jan 2015 @ 7:13am*                    + | + | FW | LW

**Re:**

There needs to be an attorney fee bond requirement before you can initiate a lawsuit.

[ **reply to this** | **link to this** | **view in chronology** ]

**That Anonymous Coward** (profile), *14 Jan 2015 @ 3:41am*            + | + | FW | LW

If I went to court with the documents being used by the Germans in this case, my ass would have been found in contempt and I would be facing criminal charges for lying to the court.
Do the same thing but have a JD and some hand-waving happens and it is suddenly okay.

By not pursuing what was fraud upon a court, the reputation of the courts have taken yet another hit. They do not like these cases, do not trust the plaintiffs (with good fucking reasons), yet still manage to let them walk away from clear fraud. This is not a case of a oopsie we meant this not that, this is nonexistent corporations, nonexistent people filing statements with the court... and the court remains complicit in its roll as a cog in a business model extorting cash.

It is better that 100 guilty men walk free, than a single innocent man spend 1 day in jail.
It is better that we let them just have the names for 100 ip addresses, than consider that an officer of the court is boldly lying to our face even when the evidence is clearly presented to us.

IP is our greatest asset, it turns porn, box office busts, and straight to dvd d rated films into huge money makers. No one will ask where the files came from, no one will ask how their IPs were found, no one will ask why the expert doesn't exist, no one will ask why the company is a ghost, all you need is $400, a list of IPs, and a boiler plate filing and the magic happens.

When someone tells you why copyright is just fine, show them these cases and ask how they can claim it isn't broken.

[ **reply to this** | **link to this** | **view in chronology** ]

**Jim Tracy**, *17 Feb 2015 @ 6:34am*                    + | + | FW | LW

I had no clue that much money could be awarded for attorney fees! That is crazy! I wonder how the judge came to a ruling like that. I would love to know the process one goes through for that to happen.

[ **reply to this** | **link to this** | **view in chronology** ]

**Add Your Comment**

Have a Techdirt Account? **Sign in now.** Want one? **Register here**

| | |
|---|---|
| Name | |
| Email | Get Techdirt's Daily Email |
| URL | |
| Subject | |
| Comment | |

Options    ☐ Use markdown for basic formatting. HTML is no longer supported.
           ☐ Save me a cookie

           [ Submit ]    [ Preview ]

<< Convicted 'Eco-Terrorist' Released From Prison...         Portland (The City) And Pabst (The...Beer?)... >>

Jeffrey Nonken: http://m.theregister.co.uk/2016/12

# EXHIBIT 7



601 West Riverside Avenue, Suite 1400
Spokane, WA 99201

Phone | 509.324.9256
Fax | 509.323.8979

December 19, 2016

David A. Lowe
Lowe Graham Jones PLLC
701 5th Ave., Ste. 4800
Seattle, WA 98104-7009
lowe@lowegrahamjones.com

**Re:    Cell Film Holdings, LLC ("CFH") v. Alacorn, WD WA Case No. 16-cv-1180 RSM**

Dear Mr. Lowe:

This law firm represents Jaime Alacorn with respect to the federal lawsuit your law firm has filed against him.

Mr. Alacorn is wholly innocent. Mr. Alacorn and Mrs. Alacorn are married and have no children. Mr. Alacorn did not copy the movie "Cell," nor did he distribute that movie to anyone. Mrs. Alacorn is likewise wholly innocent. The Alacorns were not at home over the Fourth of July weekend when the accused data blip was entrapped by your client's representatives' German investigator. The Alacorns had never heard of the movie before the lawsuit. English is not Mr. Alacorn's native language and his personal entertainment choices are customarily not in English.

Mr. Alacorn works in a computer repair/service business. With his background, Mr. Alacorn is aware of Bittorrent, but he does not use it. Mr. Alacorn occasionally brings customer computers home as part of his job. He has an open wifi system at home because he does not want to have to enter a family private password into a customer's computer when servicing it.

The Alacorns live in the Brigadoon Apartment complex on Laventure Road in Mt. Vernon. The Brigadoon Apartments are a five building complex. Their building is on the south side of the Brigadoon complex which directly abuts another multi-building apartment complex on Kulshan View Drive to the south. This may be an explanation for the existence of the entrapped blip, although the entrapped blip may also simply be an errant data point as must have been the explanation in my firm's representation of other innocent defendants who had a password protected wifi network.



We respectfully request that CFH voluntarily dismiss Mr. Alacorn from the case. If he is dismissed by Noon on Tuesday December 27, 2016, we will not Answer the Amended Complaint, and we will not seek defense attorneys' fees or costs. If the case is not dismissed by Noon Tuesday December 27, 2016, we will Answer during the afternoon of December 27, 2016, and we will seek defense attorneys' fees when Mr. Alacorn wins, which is a certainty given his innocence.

We have investigated the CFH cases filed throughout the country by your law firm and by the other law firms associated with your client's foreign representatives. As with our investigations of The Thompsons Film, Elf-Man, and London Has Fallen, we see no manner in which your client could prevail at trial. The German investigators are not licensed as private investigators in the State of Washington, as is required by RCW 18.165 for them to generate evidence to be admitted into court. Even if the entrapped blip is admissible, it is not sufficient evidence that any person copied the movie or distributed it in violation of Title 17 U.S.C. As we understand Dr. Richter's report, the entrapped blip is so small that it is not humanly perceptible, just as we showed with Mr. Patzer's data of an entrapped blip in Elf-Man.

Additionally, we remain concerned with the manner in which CFH's counsel has sought the ISP subscriber identifications that form the basis for naming and serving hundreds of federal defendants. We would not be surprised if CFH itself is unaware of the mechanics of the institution of these cases, but its counsel and its foreign representatives are.

For example, just as in LHF, we see that the various CFH counsel have used Daniel Arheidt claiming to be a consultant to Maverickeye, and have used Daniel Macek claiming to be a consultant to Crystal Bay Corporation, and also have used no technical witness other than local counsel to vouch for the typed-up charts of alleged infringement. We also see a declaration of Mesut Tarhan claiming to be an "IT Administrator" for Maverickeye, used in ED LA Case No. 2:16-cv-14970 ECF No. 4-2. The date and time of Mr. Tarhan's "observation" is in between the dates and times of a declaration filed by your firm where Mr. Arheidt claims to have made the "observation." Given this overlap, both of these declarations – Mr. Tarhan's and Mr. Arheidt's – cannot be true.

Mr. Macek has been a prolific witness used to obtain subpoenas, using declarations which state no background or experience in the matters to which he states he "has personal knowledge." Your law firm has filed declarations from Mr. Macek claiming to be a consultant to Crystal Bay Corporation, including in cases claimed to be related to this one in Dkt. # 3. Your law firm has also filed identical declarations from Mr. Macek claiming to be a consultant to Maverickeye, in cases also claimed to be related to this one in Dkt. #3. Mr. Arheidt's declaration in this matter,



Dkt. #6, is likewise identical to that filed by Mr. Macek claiming to work for Crystal Bay Corporation in ED WA 2:13-cv-395, ECF No. 88 – the case where your law firm informed the Court that "Darren M Griffin" was a "former investigator" for Crystal Bay Corporation, ECF No. 105.

The connection to prolific fictitious witness "Darren M. Griffin" occurs in other CFH matters as well. For example, in the Southern District of Ohio, Case No. 3:16-cv-2265, CFH filed a Declaration of Daniel Macek claiming to work for Crystal Bay Corporation, ECF No. 6-1, which appears to be executed April 30, 2016. The accompanying typed up chart of claimed infringement shows the "hit dates" ranging from June 10 to June 23, 2016. How could Mr. Macek sign a Declaration before the blips had even been entrapped?

Despite this clear pre-dating problem, CFH's Ohio counsel, Timothy Shimko, filed an 18 page *Ex Parte* Application for Leave to Take Discovery Prior to Rule 26(f) Conference, ECF No. 6. CFH's Application cites Mr. Macek's pre-dated declaration forty-seven times (e.g. "This evidence is then saved by Crystal Bay. Macek Decl. ¶13." ECF No. 6 at 10.) The June, 2016 dates and times of these Ohio "Macek at Crystal Bay" observations directly overlap the June, 2016 dates and times Mr. Arheidt says he "observed infringing" while working as a Maverickeye consultant in a CFH declaration filed by your law firm in WD WA Case No. 2:16-cv-1091. Given this overlap, both of these declarations – Mr. Macek's and Mr. Arheidt's – cannot be true.

We see CFH has its Fed. R. Civ. P. 26(f) Conference due December 28, 2016, and its required 26(a)(1) initial disclosures January 4, 2017 in WD WA Case No. 2:16-cv-1649. Will Mr. Macek and Crystal Bay Corporation be disclosed? Mr. Tarhan? (We note the current use of Mr. Tarhan in ED LA, which formerly used Mr. Macek, for example, in Clear Sky v. Doe, Case No. 2:16-cv-1511, ECF No. 4-2, and also formerly used "Darren M. Griffin," for example, in TCYK v. Doe, Case No. 2:13-cv-3064, ECF No. 3-1.)

If we are forced to Answer for Mr. Alacorn, we will insist on discovery of the relationships of Messrs. Tarhan and Arheidt of Maverickeye to Messrs. Macek and "Darren M. Griffin" of Crystal Bay Corporation (and to "Daniel Susac" of "Excipio" who has similar handwriting to Daniel Arheidt and "Darren M. Griffin.") We doubt Mr. Arheidt will be eager to explain his relationship to the prolific fictitious witness, or how Mr. Arheidt could have filed a twenty-one paragraph declaration identical to that of a fictitious person "based on personal knowledge."

We assume you and your client's foreign representatives are aware of the action brought last week by the United States Attorney for the District of Minnesota for fraud and perjury for acts including



the use of sham entities and witnesses in Bittorrent copyright litigation. Is CFH aware of its direct connections to fictitious witness "Darren M. Griffin" through its SD OH witness Daniel Macek who, like the fictitious witness, claims to be a consultant of "Crystal Bay Corporation" of "South Dakota" "in its technical department"? Over forty of these fictitious "Darren M. Griffin" declarations were filed in our Western District of Washington.

We have carefully reviewed the identical Crystal Bay Corporation declarations to the identical Maverickeye declarations. We see the bulk of the "Darren M. Griffin" of Crystal Bay Corporation declarations were filed in 2013. Then in 2014 came the Daniel Macek of Crystal Bay Corporation declarations. Then in 2015 came the Daniel Macek of Maverickeye declarations. In mid-2016 the Daniel Arheidt of Maverickeye declarations start (with very similar handwriting to "Daniel Susac" and "Darren M. Griffin.")

All of these declarations are essentially identical, regardless of the witness and regardless of the company the witness claims to work for. For example, the Macek declaration filed in Elf-Man, ED WA Case No. 2:13-cv-395, ECF No. 88, has the same typographical error ("The forensic technology used by Crystal Bay is propriety (sic) software…") as the Arheidt declaration filed in this case Dkt. #6 (The forensic technology used by MEU is propriety (sic) software…") Not exactly "propriety."

A final notable point is CFH's filing in the ED VA, Case No. 3:16-cv-750, ECF No. 5-1, of the report of Dr. Simone Richter who does not vouch for the typed-up charts of alleged infringement in that case, but does vouch for the apparent ability of the "MaverickMonitor" software to entrap Bittorrent blips and their associated metadata. We find it interesting that Dr. Richter's report is dated April 21, 2014 (when most of the U.S. non-porn Bittorrent cases were still using "Macek at Crystal Bay Corporation" declarations) and that the test itself was conducted in January, 2014 (at the tail end of the long run of the "Darren M. Griffin" at "Crystal Bay Corporation" declarations.) Maybe Dr. Richter's 30-month-old report is somehow relevant to CFH's newly-filed cases, but again we find the overlap with a South Dakota shelf corporation with no "technical department" and a fictitious "witness" to be troubling.

We could go on with the mysterious overlaps and timing issues that are evident from the permanent PACER records. But the bottom line is that there is no admissible evidence from these German witnesses, regardless of their stated employers and regardless of their existence, because Washington law protects its citizens from this very thing – the use of unlicensed investigators creating evidence to be used in Washington courts, especially unlicensed investigators out of reach of discovery. Plus, Mr. Alacorn is wholly innocent. A defense verdict is certain.



Please consider our offer to not Answer, nor pursue defense attorneys' fees, if the case against Mr. Alacorn is dismissed by Noon, Tuesday December 27, 2016. Otherwise, we will submit our Answer that afternoon and patiently work towards Mr. Alacorn's full exoneration and the ruling on our request for defense attorneys' fees.

Thank you for your consideration of our position.

Very truly yours,

LEE & HAYES, PLLC

J. Christopher Lynch
(509) 944-4792
Chris@leehayes.com

c:      Mr. Alacorn
        Zach K. Haveman, Esq.
        Kyle D. Nelson, Esq.

# EXHIBIT 8

**From:** Chris Lynch
**Sent:** Monday, April 21, 2014 3:09 PM
**To:** Chris Lynch; elfmanwa@vandermaylawfirm.com
**Subject:** ▆▆▆▆▆▆▆▆▆▆

Ms. VanderMay:

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ Here is Mr. Molina's 700 page expose of APMC and its Philippines back office.  We are surprised you are surprised, ▆▆▆▆▆▆▆▆▆▆▆▆ Mr. Molina's explanation both appear to show that your firm may have been hired by APMC, not Elf-Man LLC.  http://prezi.com/au9es8zrsnm1/themanako123/

Here are Mr. Lamberson's Amended Initial Disclosures to include Messrs Achache and Molina as witnesses (we already had Ms. Romanoff listed.)  We have also provided these by USPS.

We also added two exhibits:

1. Mr. Molina's BPO Cebu explanation of APMC.  Another of our favorite lines from Mr. Molina's explanation: "APMC stays in the background where they are invisible, but we [APMC] are the center (i.e. 'we make things happen.')"

2. A list of the Vision Films movies uploaded to bittorrent by "Hero Master."  Turns out the allegations at paragraph 45 of our Second Amended Answer, Affirmative Defenses and Counterclaims were just the tip of the iceberg.  Not only did "Hero Master" initially seed *Elf-Man* and *Blood Money* before their public release, he/she also uploaded the majority of the Vision Films movies on the "APMC/Vision Films Schedule A" prior to their public release.  So, it appears our suspicions are correct and coming to light:  Vision Films uploads the movies and then Vision Films hires APMC to track and sue everyone who takes the bait.  You said our allegations of "barratry" were scandalous, but it appears they are true.

We are still waiting for a revised explanation to the one provided regarding the relationship of the "investigators" to *Elf-Man*.  Our letter dated April 16, 2014 in this regard is attached.  You say we have presented "nothing" to support our claim, so maybe you missed the six numbered detailed points starting at number 3 on page 2 of the April 16 letter.  Plus, now that we have Mr. Molina's BPO Cebu explanation, it seems your firm's April 14 explanation of the "paperless" engagements of Crystal Bay, Inc. (sic, actually Crystal Bay Corporation) and Mr. Macek must be inaccurate, especially since Mr. Molina's explanation indicates "the BPO Cebu office will be receiving these declarations from Daniel Macek."  "These declarations" are the Declarations to Support Motions for Expedited Discovery – the ones Mr. Molina's explanation says are to be included in every case, but which are missing from the ED WA and WD WA *Elf-Man* cases.  We think Elf-Man LLC is in a difficult position regarding the explanation provided the court, compared to Mr. Molina's explanation, especially since your firm will have to address the truth of the relationship in its reply brief re the

1

DECLARATION OF
J. CHRISTOPHER LYNCH - 29

Noerr-Pennington issues (and the impending discovery.)  We are prepared to move to submit Mr. Molina's entire explanation as a sur-reply.

Tomorrow, we will be sending a new set of discovery directed at the relationship/correspondence of APMC to the lawyers of record for the *Elf-Man* cases.  If we understand Mr. Molina's explanation correctly, it appears that your law firm communicates directly with APMC's BPO Cebu.  The corporate disclosure statement required by our court does not include any disclosure of APMC or BPO Cebu or Vision Films, so we cannot imagine how Elf-Man LLC could claim your law firm's communications with APMC and its BPO Cebu are privileged.   Please be prepared that we will seek full discovery of your firm's communications (and the Crowell firm's communications) with APMC/BPO Cebu and its "legal team."  If you have some explanation how these could be privileged communications, we would like to hear it now before we serve this discovery tomorrow.

Your client's house of cards has fallen.  As Mr. Molina's explanation shows, APMC's entire business model is regrettably based on two faulty assumptions: (i) that capturing one uploaded packet from a swarm member equals evidence of infringement, even if uncorroborated,  and (ii) that these single wispy captured packets can somehow be admissible evidence, despite the foreign un-licensed investigator's direct contingency interest in turning the data into a judgment.  All of the rest – i.e. APMC's "sales team" trying to sell the data, APMC's  litigation writing services from the Philippines, APMC's mistakes about the owners of the exclusive rights, APMC's lack of understanding of *Righthaven*, the sideline of South Dakota's delinquent Crystal Bay Corporation, etc. are just icing on the huge mess of a cake in which your client finds itself with the current state of our ongoing investigation.

We think Judge Rice will be quite interested in the truth of APMC's role in selling data and packaged defective lawsuits against thousands of innocent people.  APMC's business model is not lawful, especially in the post-*Righthaven* world, and opacity about APMC's existence and its relationship to the supposed real party in interest does not make the situation any better.

███████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████ so please consider this information:

1.   Mr. Lamberson didn't copy the work.
2.   Your client has no admissible evidence that Mr. Lamberson copied anything. For example, we think the response to RFP #12 is a hoot: Apparently, Mr. Lamberson copied thousands of works from 11/25/12 to 12/23/12 – apparently, he volitionally sought and copied numerous works in German, and Dutch, and Mandarin, and French, and Korean, and Russian, and Spanish, and Italian, and Greek, and Japanese.  Mr. Lamberson is an interesting person, but is not multi-lingual.  We told you about Mr. Lamberson's computer in discovery, so it should come as no surprise that it lacks the storage capacity to handle even one day of the copying alleged in response to RFP #12 at an alleged rate of over 100Gb per day.  Another amusing example, the geo-location of the PCAP data you gave us indicates the request by the "investigator" for the packet from the IP address associated with Mr. Lamberson shows that the investigator's request came from an office building in Amsterdam, and the list of works allegedly infringed includes "Netherlands Top 40." Mr. Lamberson loves music, but does not listen to the Netherlands Top 40 – but maybe the APMC person in Amsterdam does.
3.   You don't know what was captured by the one-second upload – it might be the disclaimed portions of the work.
4.   Vision Films appears to own the exclusive distribution rights – the right implicated by the investigator uploading the one bit.  But the time to amend to add parties is passed.
5.   Vision Films appears to be seeding its own work. Each (unknown, unpopular) work on Schedule A was uploaded by the same person (Hero Master) prior to its public release.  We will undertake discovery as to this Hero Master once we see how Vision Films intends to comply with our first subpoena.

2

DECLARATION OF
J. CHRISTOPHER LYNCH - 30

HONORABLE THOMAS O. RICE

J. CHRISTOPHER LYNCH, WSBA #17462
JEFFREY R. SMITH, WSBA #37460
RHETT V. BARNEY, WSBA #44764
LEE & HAYES, PLLC
601 W. Riverside Avenue, Suite 1400
Spokane, WA 99201
Phone: (509) 324-9256
Fax: (509) 323-8979
Emails: chris@leehayes.com
        jeffreys@leehayes.com
        rhettb@leehayes.com

*Counsel for Defendant Ryan Lamberson*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ELF-MAN, LLC, | No. 2:13-CV-00395-TOR |
| Plaintiff, | |
| vs. | DECLARATION OF J. CHRISTOPHER LYNCH IN SUPPORT OF DEFENDANT'S MOTION FOR RULE 11 SANCTIONS |
| RYAN LAMBERSON, | |
| Defendant. | |

I, J. Christopher Lynch, declare as follows:

1.     I am over 18 years of age and am competent to testify. I make this declaration based on my own personal knowledge. I am one of the attorneys for Defendant, Ryan Lamberson (hereinafter, "Mr. Lamberson"). I expressly

DECLARATION OF J. CHRISTOPHER LYNCH IN
SUPPORT OF DEFENDANT'S MOTION
FOR RULE 11 SANCTIONS - 1

LEE & HAYES, PLLC
601 West Riverside Avenue, Suite 1400
Spokane, Washington 99201
Telephone: (509)324-9256 Fax: (509)323-8979

PAGES 2 – 9 INTENTIONALLY OMITTED

29. Finally, on December 16, 2013, plaintiff made its Initial Disclosures, and Mr. Griffin was not identified as a witness. Messrs. Macek and Patzer were identified.

30. It may be that Darren M. Griffin is fictitious. We have seen multiple declarations from Darren M. Griffin all signed "DG" and without any indication where the witness resides, where the declarations were signed, or where the purported investigation took place. This "Mr. Griffin" claims to work for or be a consultant to "Crystal Bay Corporation" "in its technical department."

31. I have investigated "Crystal Bay Corporation" of South Dakota. It is a "shelf corporation" without any headquarters facility or business license. It does no advertising of its services. It has no website. I called the facility in South Dakota listed as the principal place of business and was told that no such company operated there. I tried to connect Mr. Griffin and Mr. Macek to Crystal Bay Corporation, but was unable to do so. I was able to determine from that investigation that Daniel Macek is a real person residing in Germany. Mr. Macek is "Googleable" as a real person in the computer arts – but Mr. Griffin is not. We found a Darren M. Griffin in Sarasota, Florida but we were not able to tie him to any computer consulting businesses. We found other Darren Griffin in Pennsylvania and Texas but could not tie them to any computer consulting

DECLARATION OF J. CHRISTOPHER LYNCH IN
SUPPORT OF DEFENDANT'S MOTION
FOR RULE 11 SANCTIONS - 10

LEE & HAYES, PLLC
601 West Riverside Avenue, Suite 1400
Spokane, Washington 99201
Telephone: (509)324-9256 Fax: (509)323-8979

1  business. We tried searching for a Darren M. Griffin in Karlsruhe or Stuttgart,

2  Germany but came up with nothing. We do not have definitive proof that there is

3  no Darren M. Griffin who authored the *Elf-Man* and other BitTorrent declarations,

4  but we are confident that if he does exist, that he did not work for Crystal Bay

5  Corporation of South Dakota "in its technical department."

6         I declare under penalty of perjury under the laws of the United States that

7  the foregoing is true and correct.

8

9         DATED this 21st day of July, 2014 at Spokane, Washington.

10                           LEE & HAYES, PLLC

11                      By: *s/ J. Christopher Lynch*
                           J. Christopher Lynch, WSBA #17462
12                         Jeffrey R. Smith, WSBA #37460
                           Rhett V. Barney, WSBA #44764
13                         601 W. Riverside Avenue, Suite
                           1400
14                         Spokane, WA 99201
                           Phone: (509) 324-9256
                           Fax: (509) 323-8979
15                         Emails:  chris@leehayes.com
                                    jeffreys@leehayes.com
16                                  rhettb@leehayes.com

17                      *Counsel for Defendant Ryan Lamberson*

18

19

DECLARATION OF J. CHRISTOPHER LYNCH IN
SUPPORT OF DEFENDANT'S MOTION
FOR RULE 11 SANCTIONS - 11

LEE & HAYES, PLLC
601 West Riverside Avenue, Suite 1400
Spokane, Washington 99201
Telephone: (509)324-9256 Fax: (509)323-8979

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of July, 2014, I caused to be electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

David A. Lowe          lowe@lowegrahamjones.com

And I hereby certify that I have mailed by United States Postal Service the document to the following:

Maureen C. VanderMay
The VanderMay Law Firm
2021 S. Jones Boulevard
Las Vegas, NV 89146

LEE & HAYES, PLLC

By: *s/ J. Christopher Lynch*
        J. Christopher Lynch, WSBA #17462
        601 W. Riverside Avenue, Suite 1400
        Spokane, WA 99201
        Phone: (509) 324-9256
        Fax: (509) 323-8979
        Email: chris@leehayes.com

DECLARATION OF J. CHRISTOPHER LYNCH IN
SUPPORT OF DEFENDANT'S MOTION
FOR RULE 11 SANCTIONS - 12

LEE & HAYES, PLLC
601 West Riverside Avenue, Suite 1400
Spokane, Washington 99201
Telephone: (509)324-9256 Fax: (509)323-8979