UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CLEAR SKIES NEVADA, LLC | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15 cv 6708 |
| | ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | |
| RENEE HANCOCK, | ) | Magistrate Judge Susan Cox |
| | ) | |
| Defendant. | ) | |

**DEFENDANT RENEE HANCOCK'S MEMORANDUM IN SUPPORT OF ATTORNEYS' FEES AND COSTS**
_____

Defendant Renee Hancock ("Renee"), through counsel, makes the following argument in support of counsel's attorneys' fees and the proposed 1.5 lodestar multiplier:

**SUMMARY**

Defendant acknowledges that the requested multiplier is only appropriate in rare occasions. *Perdue v. Kenny ex rel. Winn*, 559 U.S. 542, 554 (2010). Statistically speaking, this is one of those rare occasions. Of the thousands of copyright troll cases filed across the country, involving tens of thousands of defendants, Renee Hancock is one of only a handful of defendants who has chosen to defend on the merits. At best, Plaintiff had knowledge that there was no evidence of infringement (or access to that evidence) many months ago. At worst, Plaintiff had knowledge at the time of filing that there was not, and would never be, evidence of infringement. Because Plaintiff persisted despite this knowledge, Defendant suggests a multiplier is appropriate here to deter Plaintiff's litigation tactics, and to also to bring her counsel's compensation more in line with their usual market rates.

1

## THE COURT'S ORDER

Defendant has submitted a proposed fee calculation of $92,851.98 to the Court. This figure accounts for the hourly rates charged by both of Defendant's attorneys, her experts' fees, and incidental expenses, all multiplied by a "lodestar" of 1.5. (Dkt. 90 at 10.) However, Defendant provides no precedent for a court adjusting upward an hourly rate simply because the rate charged is lower than the market rate, nor is she necessarily entitled to all of the fees purportedly billed by her attorneys. Accordingly, the Court directs the Defendant to submit a brief justifying what she believes is the appropriate fee amount within twenty-one days of this order, including any precedent that may exist for adjusting the "lodestar" upward in accordance with the market rate.

(Dkt. No. 101, p. 8.)

## STATEMENT OF FACTS RELEVANT TO THE DETERMINATION OF A FEE MULTIPLIER

Plaintiff filed this case against 30 "Does" on July 31, 2015. (Dkt. No. 1.) Plaintiff did little or nothing to prosecute this matter until forced to amend, which it did against three defendants, William Anderson, Jason Richards and Renee Hancock. (Dkt. No. 31.) Defendant Hancock was served on May 1, 2016 and failed to answer by the ordered response date of May 23, 2016. (Dkt. No. 43.) Plaintiff waited another two months, and sent more threatening demand letters before eventually filing a motion for default that made no mention of actual evidence of infringement. (Dkt. No. 44.) Defendant retained Attorney Clay in August of 2016. (Dkt. No. 51.) Attorney Clay made several attempts to obtain a walkaway settlement, but Plaintiff persisted. On October 3, 2016, after Attorney Clay made her "walkaway or go to trial" theory of the case abundantly clear to Plaintiff's Attorney Mark Cisek at that morning's status, Cisek sent Clay the following email:

> *Today you asked me to get you a settlement offer in the above-referenced matter. Our client would be willing to settle the above-referenced case against your client in exchange for a payment of $2,800.00, and your client agreeing to the standard language in our settlement demand. Payment would be due within ten days.*

2

> *This offer represents a $2,100 reduction in the $4,900 offer our client made your client back in July.*
>
> *Understand that if we have to brief a motion to dismiss or engage in discovery, our client will insist on raising its subsequent settlement demands to offset its raised costs.*

Declaration of Lisa L. Clay, ("Clay Dec.") ¶ 3, attached hereto as Exhibit A.

Defendant Hancock rejected Plaintiff's offer. Shortly thereafter, Defendant Hancock filed a Motion to Dismiss, suggesting that Plaintiff's bare-bones form complaints did not meet the pleadings standards of this and other jurisdictions. (Dkt No. 56.) Judge Kendall disagreed, and denied the motion. (Dkt. No. 62.) Armed with significant research from other troll defense attorneys and experts, Defendant Hancock filed an Answer, Class-Action Counterclaim and related third-party claims on January 3, 2017. (Dkt. Nos. 64 and 65.) Judge Kendall did not receive the Counterclaim and Third-Party Complaints favorably. (Dkt. No. 66. and transcript related thereto, Dkt. No. 69.) Defendant voluntarily dismissed her affirmative claims on January 10, 2017, after Attorney Clay sent Attorney Michael Hierl a detailed, extensively researched, and very strongly worded letter on January 6, 2017, making clear Defendant's position that she wished to proceed to trial or be compensated for having to defend a frivolous lawsuit. (Clay Dec. ¶ 4.)

Throughout January, February, March, April and May of 2017, Attorney Clay served written discovery; made requests for depositions; repeatedly offered to schedule her client's deposition and offered to arrange for the forensic review of her client's computer. (Clay Dec. ¶¶ 5, 6, 9, 14, 15, 16, 17, 18, 19.) For its part, Plaintiff did not timely answer discovery; refused to schedule depositions; never confirmed a date for Defendant's deposition; and never

3

followed through on the forensic evaluation of Defendant's computer. The only discovery Defendant ever received was a copy of a PCAP containing an unreadable fraction of a fraction of the purported copyrighted work. (Clay Dec. ¶¶ 6, 9, 12, 14, 15, 16, 17, 18, 19.)

In what now in retrospect can only be described as an obfuscation and delay tactic, Plaintiff, without consultation with Defendant, filed a "Motion to Set a Settlement Conference." (Clay Dec. ¶ 7.) Defendant filed an objection, but Judge Kendall ordered that the case be referred to Magistrate Judge Cox for settlement proceedings. (Clay Dec. ¶ 8.) At a hearing before Judge Cox on March 7, 2017, the case was set for settlement conference on June 21, 2017, over a month after Judge Kendall had ordered dispositive motions filed. (Clay Dec. ¶ 10.)

Plaintiff filed a Motion for Protective Order (Dkt. No. 79), once again without consultation with Defendant. The Order was entered before Attorney Clay could file a response, as she was out of the country. (Clay Dec. ¶ 11.)

Attorney Clay had already begun discussions with Attorney Curt Edmondson to join the defense team, and Attorney Edmondson filed his pro hac vice application on April 4, 2017. (Clay Dec. ¶ 13.) Attorney Edmondson's attempts to obtain discovery from Plaintiff's counsel were as unsuccessful as Attorney Clay's efforts had been. (*Id*.) Attorney Edmondson immediately began working with experts and investigators to prepare the case for summary judgment (Declaration of J. Curtis Edmondson ("Edmondson Dec.") ¶ 3, 4, attached hereto as Exhibit B.

As of April 24, 2017, when Plaintiff's counsel forwarded a draft "Motion for Extension of Time to Complete Discovery," Plaintiff had provided no answers to discovery, merely objections. (Clay Dec. ¶ 15.) When Defendant's counsel would not agree to the proposed extension, and instead indicated that they had begun drafting a motion for summary judgment,

4

Plaintiff's counsel amended his draft motion to include a request for voluntary dismissal. (Clay Dec. ¶ 20.) Defendant filed an objection and at the Motion's presentment, Judge Kendall asked the parties to brief the issue of whether a dismissal should be "with" or "without" prejudice. (Clay Dec. ¶ 21.)

Because the case had been dismissed, Defendant wished to preserve her appellate rights, and filed a Notice of Appeal on May 26, 2017. (Dkt. No. 95.) The Seventh Circuit dismissed the appeal at Appellant's request on June 16, 2017. (Dkt. No. 100.)

Judge Kendall's August 23, 2017 Memorandum Opinion and Order (Dkt. No 101) dismissed the case with prejudice and directed Defendant "to submit a brief justifying what she believes is the appropriate fee amount within twenty-one days of this order, including any precedent that may exist for adjusting the 'lodestar' upward in accordance with the market rate." (*Id.*, p. 8.)

Defendant's attorneys' fees and costs could have been avoided if Plaintiff had agreed to the proposed walkaway before motion and discovery practice commenced. (Clay Dec. ¶ 23.)

**LEGAL ARGUMENT**

Defendant has been adamant since she started incurring meaningful costs and fees that she was not willing to walk away unless Plaintiff was willing (or ordered) to compensate her for having to defend a lawsuit Plaintiff had to know was frivolous. (Clay Dec. ¶ 4.) In retrospect, Plaintiff and its counsel must have known of their folly. Despite that knowledge, they willingly, intentionally, repeatedly (and arguably callously) engaged in litigation they knew had no merit, forcing Defendant to incur substantial costs and fees. Equally important, Plaintiff and its counsel are well aware of the "prevailing party" language in §505, a set of circumstances that

should have, but did not, provide them reason for pause. Given the intentional nature of Plaintiff's decision to maintain litigation known to be without merit, Defendant requests a multiplier in an effort to deter Plaintiff's ongoing litigation tactics, and also to bring her counsel's compensation more in line with their usual market rates.

> I. **Defendant Is the Prevailing Party and Presumptively Entitled to an Award of "Reasonable" Fees.**

The Court has already determined, relying on the factors set forth in *Fogerty v. Fantasy, Inc.*, that "the Court will award some amount of reasonable attorneys' fees." (Dkt. 101, p. 8.) That issue need not be further addressed.

> II. **Defendants' Counsel's Lodestar is Presumptively Reasonable**.

Having established that Defendant is entitled to "some" award of costs and fees, the analysis must next address the reasonableness of counsel's requested lodestar, i.e. the number of hours billed multiplied by the stated hourly rate. Both Attorney Clay and Attorney Edmondson have previously presented invoices describing work performed, and submitted declarations to this court describing the necessity of that work. (See Dkt. No. 90 and Exhibits thereto.) Since being retained in this matter, Attorney Clay and those supervised by her have now billed 209.4 hours in this matter, and she has paid out-of-pocket costs not reimbursed by her client of $685.86. (Clay Dec. ¶ 26.) Her hourly rate of $285/hour and the $200/hour rate of her colleagues is significantly below that of many IP attorneys in the Chicago area and entitled to a presumption of reasonableness. *Mathur v. Bd. Of Trustees of S. Ill. Univ.*, 317 F.3d 738, 743 ("the attorney's actual billing rate for comparable work is presumptively appropriate to use as the market rate.") Since being retained in this matter, Attorney Edmondson has billed 24.98 hours, but has not maintained records for significant time prior to being formally retained, nor

6

for time spent on the matter since filing of the May 11, 2017 memorandum. (Edmondson Dec. ¶ 6.) He has incurred $8523.45 in out of pocket costs and fees not reimbursed by his client. (*Id*.) His hourly rate of $350.00, which accounts for his status as highly experienced IP attorney licensed in three states with significant trial practice in these types of cases, is also significantly below that of many IP attorneys in the Chicago area, and is also entitled to a presumption of reasonableness. (*Id*.)[1] This issue has also been sufficiently briefed and need not be further addressed.

> III. **Adjustment of the Lodestar is Necessary to the Determination of a Reasonable Fee**.

The primary question for the Court at this time is whether Defendant's counsel is entitled to the requested 1.5 multiplier. Defendant acknowledges, as she must, that "[t]he 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence…and [we] have placed upon the fee applicant who seeks more than that the burden of showing that **'such an adjustment is *necessary* to the determination of a reasonable fee**." *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 920 (2007). Defendant here suggests that the requested multiplier, given the facts presented here, is indeed necessary.

The Court may exercise its discretion to adjust the lodestar upward or downward. *JCW Invs., Inc. v. Novelty, Inc.* 482, 910, 921 (7th Cir. 2007); *see also City of Burlington v. Dague*, 505

---

[1] Although the Seventh Circuit has not adopted the *Laffey* analysis, courts in the Northern District have reviewed the matrix "when considering the reasonableness of hourly rates for fee awards. *See, e.g. Pickett v. Sheridan Health Care Ctr.*, 664 Fd.632, 650 (7th Cir. 2011). A copy of the most recent matrix available online is attached to the declaration of J. Curtis Edmondson as Exhibit 1. Survey data is also frequently considered. *Id*. Therefore, excerpts from a recent American Intellectual Property Law Association (AIPLA) survey are attached to the declaration of J. Curtis Edmondson as Exhibit 2. Both the *Laffey* Matrix and the AIPLA data suggest that Clay and Edmondson's rates are significantly below that of attorneys with their expertise and similar years of experience.

U.S. 557, 562. Here, Defendant argues that an upward adjustment of that lodestar is necessary to provide Defendant with a reasonable fee. We begin with the factors relied upon in *Forgerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) for deciding whether to award fees in the first instance, which should include, but are not limited to:

> (1) that the action was frivolous because [Plaintiff] had no evidence to support [its] claim against [Defendant]; (2) that [Plaintiff's] motivation in filing the action was questionable in the [Plaintiff] had filed a multiplicity of suits, each involving the same or similar infringement allegations with quick settlements and improperly joined defendants in such actions thus saving extensive filing fees, including the [initial] action against [Defendant] involving [30] defendants; (3) that the action was objectively unreasonable because [Plaintiff] lacked any evidence to support it; and (4) that awarding fees would advance the consideration of compensation and deterrence.

*Bell v. Lantz*, 825 F.3d 849, 850 (7th Cir. 2016).[2]

An upward adjustment is necessary here because the prevailing party has spent nearly two years defending herself against frivolous claims, and wishes to deter this Plaintiff (and other Plaintiffs of its ilk) from filing similar claims against other defendants – particularly those who may not be fortunate enough to find counsel. Like points 1 and 3 in *Bell*, the Court has already suggested that Plaintiff had no evidence of infringement. (Dkt. No. 101, pp. 6-7.) It is undisputed, as in *Bell* point 2, that this Plaintiff files "a multiplicity of suits, each involving the same or similar infringement allegations with quick settlements and improper joinder" (*Id.*; See

---

[2] *Bell v. Lantz* is instructive for another reason, as evidence of what Defendant here *does not* wish to attempt. In *Bell*, prevailing party counsel had billed his client at $250/hr for the vast majority of the representation, until his last bill, evidencing work on the fee petition, which he billed at $410/hour. Counsel then sought an award for all his work at the $410/hour rate. The undersigned distinguishes *Bell* for two important reasons. First, they do not wish to misrepresent their hourly rate, as counsel did in *Bell*, a cheeky decision that the court appropriately disregarded. Rather, the undersigned suggest there that application of a multiplier, and setting forth evidence of the applicable standard for that application, is a more appropriate course of action.

8

also Dkt No. 85, pp. 1-2; Dkt. No. 90, pp. 1-2). Here, Defendant suggests that the fourth *Bell* factor, advancing the consideration of compensation and deterrence, is of the utmost importance -- so important that an upward adjustment of the lodestar is necessary to the determination of a reasonable fee.

One other aspect should be factored into the multiplier analysis. Attorney Clay's usual billing rate is between $300 - $400/hour, depending on a wide variety of factors, including the complexity of the matter; the likelihood of payment; and the ability of the client to pay the stated rate. (Clay Dec. ¶ 24.) In this case, Attorney Clay (and later, Attorney Edmondson) accepted this representation and billed at lower-than-usual rate knowing that Defendant Hancock had no means of paying for services rendered, and assuming that Plaintiff would do what every other troll plaintiff had done in every other case where her client refused to pay, and dismiss after a few letters and phone calls were exchanged. (Clay Dec. ¶ 25.) Attorney Clay had no expectation of litigating this matter and indeed, as a solo practitioner, found it exceedingly challenging to maintain the representation when it became clear Plaintiff was not going to dismiss at the appropriate juncture. (*Id*.)

For these reasons, Defendant suggests that the requested 1.5 multiplier to counsel's existing lodestar is indeed ***necessary*** to the determination of a reasonable fee, and should be awarded by this Honorable Court.

## CONCLUSION

For all of the reasons described herein, Defendant Renee Hancock respectfully requests payment of all costs and fees, along with a lodestar multiplier as follows:

9

| Description | Amount | Amount With 1.5 Multiplier |
|---|---|---|
| 209.40 hours of attorney time: Lisa L. Clay and those overseen by her | $58,106.50 | $87,159.75 |
| 24.98 hours of attorney time: J. Curtis Edmondson | $8743.00 | $13,114.50 |
| Costs incurred by Lisa L. Clay | $685.86 | $685.86 |
| Costs Incurred by J. Curtis Edmondson | $8523.45 | $8523.45 |
| **Totals** | **$76,058.81** | **$109,483.56** |

Wherefore, Defendant Renee Hancock requests an Order:

(a) Finding her requested fees, including the 1.5 multiplier appropriate and reasonable;

(b) Entering judgment for amounts awarded;

(c) Any other remedy this Court deems just and reasonable.

Respectfully submitted:

_____/s/  Lisa L. Clay_____
Lisa L. Clay
Attorney at Law
345 N. Canal Street, Suite C202
Chicago, IL 60606
312.753.5302
lclayaal@gmail.com
ARDC # 5277257

_____/s/    Curt Edmondson\_\_\_\_\_
J. Curtis Edmondson, P.E.
601 Main Street, Suite 210
Vancouver, WA 98660
3699 John Olson Place
Hillsboro, OR, 97124
503.336.3749
jcedmondson@edmolaw.com
Pro Hac admittee

10

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of September, I caused to be electronically filed the foregoing **DEFENDANT RENEE HANCOCK'S MEMORANDUM IN SUPPORT OF ATTORNEYS' FEES AND COSTS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record.

/s/   Lisa L. Clay